KINGMAN vs. GRAHAM and another.

*January 13 — February 8, 1881.*

ESTOPPEL IN PAIS. *Whether owner of realty estopped from asserting his title by silence during negotiations, in his presence, relative to the property.*

1. The facts that, in a conversation between A. and B., A. used language implying a claim on his part to the ownership of certain realty, and that X., the real owner, though present, remained silent, do not estop X., as against B., from now asserting his own title, where it does not appear that any negotiations were going on between A. and B. at the time, in respect to which it was important to B. that he should know the true state of the title.

2. To estop the owner of land from asserting his title, on the ground that he has induced the person claiming such estoppel to believe that, the title was in another person, an intention to deceive and mislead, or negligence so gross as to amount to constructive fraud, must be clearly shown.

3. Where the title to land has been duly recorded, the owner may generally presume that another person, negotiating with reference to the land, is acquainted with the record; and he cannot ordinarily be estopped by mere silence from afterwards asserting his title; though if he is directly apprised that such other person is about to act in ignorance of the true state of the title, where that is important, good faith may require him to speak, and failure to do so may be ground of estoppel.

4. Plaintiff's father, having duly-recorded title to an undivided two-thirds of certain real property, including a steam mill, conveyed it for a valuable consideration to plaintiff. Two years after the deed to plaintiff was recorded, his father, who had a lease of the whole property, with more than a year to run, negotiated with the defendant G. (a resident of the county in which the mill was situate), for a partnership of one year in a manufacturing business conducted by means of said property. By the terms of the partnership, a certain valuation was put upon the real property, and G. was to put in material to the same amount, and to pay his copartner his half of the rent, and they were to share equally in the profits and losses. Plaintiff was present when this contract was made, and was silent as to his ownership of any interest in the land. G. testifies that he would not have entered into such partnership if he had known that plaintiff's father did not own the two-thirds of the mill property; but there is no proof that plaintiff knew this fact. Both defendants testify that they gave the father credit which they would not have given him but for their belief that he owned such interest; and it appears that, in order to collect from him the amount of his indebtedness to them, they attached said interest, and sold it on execution against him, and now hold it under such sale. *Held*, that these facts are not sufficient to estop plaintiff from asserting his title in this action of ejectment.

5. The answer showing that the time for redemption from the execution sale had not expired, it does not show a right of possession in defendants as against plaintiff's father, and *quære* whether, without alleging a license from the father, it shows a defense against the plaintiff.

APPEAL from the Circuit Court for *Grant* County.

The case is thus stated by Mr. Justice TAYLOR:

" This is an action of ejectment, to recover from the defendants the undivided two-thirds of certain real estate situated in

Muscoda, in this state. The property is village lots, and had thereon a steam mill, which had been used for several years for the manufacture of cooperage materials. The proofs upon the trial establish certain facts beyond dispute: *First*, that on 4th day of March, 1872, Marshall Kingman, the father of the plantiff, owned the undivided two-thirds, and one Joseph Chalders owned the other undivided one-third of the real estate in question, and the deeds of the respective parties were duly recorded in the office of the register of deeds of the proper county. *Second*, that on the day last named, Marshall Kingman and his wife, by deed bearing that date, conveyed all their interest in said real estate to their son *Henry M. Kingman*, the plaintiff in this action, and that such deed was duly recorded on the 6th day of March, 1872, in the office of the register of deeds of the proper county. *Third*, that such deed was made in good faith, upon a sufficient and valuable consideration, and without any fraudulent intent to hinder, delay, cheat or defraud the defendants or any other person. *Fourth*, that the plaintiff had not conveyed his estate in said premises, or any part thereof, to any other person. *Fifth*, that in March, 1875, the defendant *Thomas J. Graham* became the owner by purchase from Joseph Chalders of the undivided one-third part of said premises. *Sixth*, that on the 11th of August, 1876, the plaintiff commenced an action for the partition of said premises against the said *Graham* and his wife; that in such action the said *Graham* answered that he was in possession as the owner of an undivided one-third of said premises, and as the agent of both the defendants of the other undivided two-thirds; denied that the plaintiff was the owner in fee-simple or had any estate of inheritance in or to the undivided two-thirds or any part or portion of said premises, divided or undivided; and denied that he was a tenant in common with the plaintiff in said real estate, or any portion thereof, or that the plaintiff was in possession of said real estate, or any part thereof, either personally or by agent.

*Seventh,* that after the filing of the said answer by *Graham* in said partition suit, plaintiff commenced this action of ejectment.

"The plaintiff, in his complaint in this suit, alleges his title to the undivided two-thirds of the premises, the defendant *Graham's* title to the undivided one-third, and the fact of having commenced an action against said *Graham* and his wife for partition; and then sets out the answer of said *Graham* in said partition suit; alleges the possession of the premises by the defendants *Graham* and *Bremer;* and demands judgment, etc.

"The defendants answer, admitting that about March 1, 1872, Marshall Kingman was the owner of the undivided two-thirds of said premises; and that *Graham* was the owner, at the time of the commencement of this action, of the undivided one-third. They admit that they refused to surrender possession of the premises, denying in general language that the plaintiff has any interest or claim therein or thereto; and also admit the proceedings in the partition suit, and that in such suit *Graham* answered as above set forth. They then allege that the real owner of the two-thirds interest in said premises is Marshall Kingman, and not the plaintiff; 'that the pretended deed of conveyance of said two-thirds of said premises, pretended to have been made and executed by Marshall Kingman to said plaintiff, and to have been executed on or about the 4th day of March, 1872, was without consideration, if made and delivered at all (which they do not admit, but deny), and was made, if made at all, with the fraudulent intent and purpose to enable the said Marshall Kingman to cheat and defraud these defendants and such other persons as should be induced to give credit to said Marshall Kingman on the faith of the representation that he was the owner of the property; that said plaintiff was never the owner of said property at all, but, if any such deed was ever made and delivered to him, it was colorable, and done with intent to protect the said Mar-

shall Kingman, and to enable him the more successfully to cheat and defraud these defendants and such other persons as might give him credit as aforesaid.'

" 'They deny upon information and belief that the plaintiff was ever in the possession of said premises by agent, lessee or otherwise, and deny that they ever knew or understood that he was or claimed to be in such possession, or to have any interest therein, until long after the said pretended conveyance to the plaintiff, and till long after the indebtedness of said Marshall Kingman to them was incurred; but, on the contrary, allege that down to about the first day of May, 1874, the said plaintiff himself gave out and caused it to be understood and believed, and aided and assisted the said Marshall Kingman to give out to these defendants and to others, and to cause it to be by them understood and believed, that the said Marshall Kingman, and not the said plaintiff, was the owner of said lands and premises; that in consequence of said representations, statements and conduct of said Marshall Kingman and said plaintiff after the date of said pretended conveyance of said premises — that is to say, after said March 4, 1872,— and of their reliance upon and belief in said statements, representations and conduct, and of their belief that he was the owner of said premises, these defendants gave credit to said Marshall Kingman and suffered him to become indebted to them in a very large sum, that is to say, at least the sum of $2,200; that but for such statements, representations and conduct of said plaintiff, as well as said Marshall Kingman, and their said belief therein and reliance thereupon, these defendants would not have given said credit, or any part thereof, to said Marshall Kingman, or suffered him to become so indebted to them; that these defendants did not know or suspect, and were never informed, and did not hear until after all of the indebtedness of said Marshall Kingman to them was incurred — that is to say, on or about the first day of May, 1874, about which time the said Marshall Kingman failed and left this state, — that

said plaintiff pretended to own said premises, or to have any interest whatever therein. They further say that they have been in possession of said premises ever since the 10th day of May, 1874, and have never at any time or in any way, directly or indirectly, recognized the plaintiff as the owner of said premises, or as having any interest whatever therein, but, on the contrary, they allege and show that on or about the 10th day of May, 1874, they commenced suit in said court against the said Marshall Kingman by attachment to collect the debt he owed them; that in the said suit they caused the said premises to be attached as the property of said Marshall Kingman; that said Marshall Kingman appeared in and defended said suit; that judgment in said suit was rendered against him and in favor of these defendants; that the said premises were sold by the sheriff of said county on an execution issued in said cause; that the said premises were bought at said sheriff's sale by these defendants, and a certificate of sale thereof issued to them; and that the same remain unredeemed — all of which will more fully and at large appear by reference to the record in said cause, to which, for greater certainty, these defendants respectfully beg to refer; that as to every other allegation in said complaint not hereinbefore admitted or denied, these defendants deny the same. Wherefore these defendants demand judgment against the said plaintiff, that his complaint herein may be dismissed, that he take nothing by his action, and that they recover their costs herein from him.'"

The cause was tried by the court without a jury. A portion of the findings of fact to which objection was taken in this court, is stated in the opinion. Upon the facts found a judgment was rendered in favor of the plaintiff; from which the defendants appealed.

*William E. Carter*, for appellants:

The case contains all the elements necessary to create an estoppel. These are said to be, (1) A false representation or

a concealment of material facts. (2) The representation must have been made with knowledge of the facts. (3) The party to whom it was made must have been ignorant of the truth of the matter. (4) It must have been made with the intention that the other party should act upon it. (5) The other party must have been induced to act upon it. Bigelow on Estoppel, 480; *Norton v. Kearney*, 10 Wis., 443; *Gill v. Rice*, 13 id., 549; *Cary v. Wheeler*, 14 id., 281; *Klœty v. Delles*, 45 id., 489; *Hope v. Lawrence*, 50 Barb., 258; *Niven v. Belknap*, 2 Johns., 573; *Hall v. Fisher*, 9 Barb., 17, 31; *Parkhurst v. Van Cortland*, 14 Johns., 15, 43; *Malin v. Malin*, 1 Wend., 625, 666; *Adams v. Rockwell*, 16 id., 285, 317; *Otis v. Sill*, 8 Barb., 102; *Chautauqua Bank v. White*, 6 id., 589; *Chapman v. Chapman*, 59 Pa. St., 214; *Crest v. Jack*, 3 Watts, 238; *Keeler v. Vantuyle*, 6 Barr, 250; *Commonwealth v. Moltz*, 10 id., 531; *Woods v. Wilson*, 37 Pa. St., 383; *Miranville v. Silverthorn*, 48 id., 149; *Lawrence v. Luhr*, 65 id., 236; *Hale v. Skinner*, 117 Mass., 474; *Stevens v. Dennett*, 51 N. H., 324; *Gregg v. Von Phul*, 1 Wall., 274; *Vilas v. Mason*, 25 Wis., 320; *McCance v. Railway Co.*, 7 H. & N., 477; *Dickerson v. Colgrove*, 100 U. S., 578. The fact that plaintiff's deed was recorded does not prevent the operation of the estoppel. Marshall Kingman was in the possession of the premises, and, in the presence of the plaintiff, acted as the owner thereof. The presumption would be, under these circumstances, that the plaintiff held the legal title as trustee for his father, or that he had conveyed the premises to him. *Platt v. Squire*, 12 Met., 494.

For the respondent there was a brief by *Barber & Clementson*, and oral argument by *Mr. Clementson:*

To constitute an estoppel, a party must have designedly made an admission inconsistent with the defense or claim which he proposes to set up, and another party must have, with his knowledge and consent, so acted on the admission that he will be injured by allowing the admission to be dis-

Kingman vs. Graham and another.

proved. 12 Eng. Rep. (Moak's notes), 376; *Zuchtmann v. Roberts*, 109 Mass., 54. Every estoppel, because it concludeth a man to allege the truth, must be certain to every intent, and not be taken by argument or inference. *Vanbibber v. Beirne*, 6 W. Va., 168. The silence of the plaintiff in this case could not estop him. His title was a matter of record. *Brant v. Virginia C. & I. Co.*, 16 Am. Law Reg., 403, 416; Bispham's Eq., 276. His father had a lease from him, and for all purposes of use had a right to deal with the property as his own. *Corning v. Troy Iron & Nail Factory*, 40 N. Y., 201. The estoppel pleaded is predicated upon the alleged fraud of the plaintiff; and in order to sustain it the defendants must clearly and distinctly prove that the indebtedness for which they recovered judgment was founded upon acts or statements of the plaintiff upon which they had a right to rely. Kerr on Fraud, 382; *Brant v. Virginia C. & I. Co.*, *supra*. Though all the allegations of the answer were sustained by the evidence, yet the plaintiff must recover in this action. The deed from his father to him, as between them, vested all the title in him, even if it was fraudulent as to creditors. *Clemens v. Clemens*, 28 Wis., 651. He has, therefore, a right to the possession of the premises until a deed pursuant to the execution sale is issued. Tay. Stats., 1560, § 80; 4 Wait's Pr., 79.

TAYLOR, J. Upon the trial the defendants did not rely upon showing that the deed from Marshall Kingman to the plaintiff was fraudulent and void as to the defendants or any other person; and, although they excepted to the finding of fact by the learned circuit judge, "that the deed from Marshall Kingman to the plaintiff was duly executed and delivered, and was made in good faith, and upon a sufficient and valuable consideration, and without any fraudulent intent to hinder, delay, cheat or defraud the defendants or either of them, or any other person or persons," the finding seems to be

sustained by the evidence; and the learned counsel for the appellants did not insist, upon the argument, that this court ought to reverse that finding as against the clear preponderance of the evidence.

As we understand the argument of the counsel for the appellants, the only point made against the findings in the case is, that the eleventh and twelfth findings of fact are not supported by the evidence, and should be reversed by this court. These findings are as follows: "*Eleventh.* That the allegations of the answer — viz.: 'that down to about the first day of May, 1874, the said plaintiff himself gave out, and caused it to be understood and believed, and aided and assisted the said Marshall Kingman to give out to these defendants and to others, and to cause it to be by them understood and believed, that the said Marshall Kingman, and not the said plaintiff, was the owner of said lands and premises; that in consequence of the said representations, statements and conduct of said Marshall Kingman and said plaintiff, after said deed to him, and of their reliance upon and belief in said statements, representations and conduct, and of their belief that he was the owner of said premises, these defendants gave credit to said Marshall Kingman and suffered him to become indebted to them in a very large sum; that but for such representations and conduct of said plaintiff, as well as said Marshall Kingman, and their said belief therein and reliance thereupon, these defendants would not have given said credit, or any part thereof, to said Marshall Kingman, or suffered him to become so indebted to them,— are not substantiated by the proofs; that said credit, and the whole thereof, was given to said Marshall Kingman upon his own representations, or upon the belief of said *Thomas J. Graham*, and *Jacob Bremer* that he was able to pay or would pay them, and not on account of the conduct or representations of the plaintiff. *Twelfth.* That this plaintiff, neither by representations nor conduct, nor by reason of silence when it was his duty to speak, is estopped from claim-

ing title to, and right to the possession of, the undivided two-thirds of said premises, as against these defendants or either of them."

It is urged upon this court that the evidence is such as should estop the plaintiff from asserting his title as against these appellants. The foundation of this estoppel is based upon two, and but two, items of evidence. The first evidence is that which tends to prove a conversation between Marshall Kingman and *Graham*, at which the plaintiff was present, in June, 1873, in which, it is claimed, Marshall Kingman, complaining of the high price charged for stave bolts by the people about Muscoda, said " that unless he could get cheaper stave bolts at Muscoda, he would remove *his mill* to the eastern part of the state." It is sufficient to say, in regard to this statement, that the plaintiff denies that he was present when any such conversation took place, and Marshall Kingman testifies that what he said was, " that unless bolts could be obtained at such prices as would admit the running of the mill at a profit, the property might have to be removed to some place where lumber was cheaper." The learned circuit judge has probably found in favor of the plaintiff as to what was in fact said at this conversation. But, even if the conversation had been just what is claimed by the appellants, we are unable to see how the fact that the plaintiff did not interrupt the conversation and declare himself the part owner of the mill could estop him from relying upon his title in this action against these defendants. It does not appear that any negotiations were going on at that time between Marshall Kingman and the defendants, or either of them, by which Marshall Kingman was seeking credit from the defendants. And unless they were having some such negotiation, and such fact was understood by the plaintiff, he was under no obligation to assert his title as against the claim of his father to the property. In order to make it the duty of the owner to break silence and assert his title when another makes claim to it, he

must know, or have good reason to believe, that some third person is about to act upon the claim made by such other in a way that he would not be likely to act if he knew the real state of the title. In such case, if the third person acts upon such claim of title so that he will be prejudiced if the party having the title be permitted to assert it, an estoppel may be claimed against the real owner. Certainly no evidence short of this can sustain an estoppel as to title in any case.

The only other evidence upon which an estoppel is based, is what took place at Dubuque at the time *Graham*, one of the appellants, made a partnership agreement with Marshall Kingman. The witnesses do not agree as to what was the exact nature of the conversation at the time the contract was made. The witness Scofield, who was the business man of Marshall Kingman at Muscoda, was present when the partnership contract was made. He testifies that some time before the contract was made, *Graham* and Marshall Kingman had a talk at Muscoda about going into partnership. *Graham* afterwards came into the office at Muscoda, and said to witness he was going to Dubuque to see what he could do about going into partnership with the old man. Marshall Kingman wrote to the witness to come down to Dubuque with *Graham*. He went down, and, in the presence of the plaintiff and witness, *Graham* and Marshall Kingman talked over the matter and came to an agreement, and the plaintiff reduced the agreement to writing for and it was signed by them. Scofield further testifies that "the mill and appurtenances were valued $6,000, and *Graham* was to offset his use of the mill with stave bolts. Mr. M. Kingman said machinery will depreciate ten per cent. in running, and *Graham* hesitated at that, and said $600 would make a good rent for the mill, and they referred to me. I said I did not want my machinery run at less depreciation than ten per cent., and then Mr. Kingman said to *Graham*, How will you rent? Will you go and rent of John Waller his mother's one-third, and then rent one-half of one-third of

me, to make you an equal partner, or shall I keep right on with that lease, and you rent half the property of me? And *Graham* said he would rent of him, as he had no deal with Waller. The plaintiff was present during this conversation."

The evidence of *Graham* and that of the Kingmans, father and son, differs in some respects as to what was said at the time this contract was made, so that the testimony of the witness Scofield, being a disinterested witness, is perhaps fully as favorable to · the defendants as all the testimony considered together could possibly be. This testimony, therefore, with the contract itself, is really all there is upon which the claimed estoppel can be founded. The contract of partnership is as follows:

" Memorandum of agreement, made this 28th day of November, 1873, by and between M. Kingman, of Dubuque, Iowa, and *Thos. J. Graham*, of Muscoda, Wis., witnesseth that said parties this day enter into a partnership, to commence January 1, 1874, to continue one year, for the manufacturing of cooperage stock at Muscoda, on the following basis: Land, buildings, machinery, tools, horse, wagon, harness, and all buildings on the said land, valued at $6,000. Said *Graham* is to put in stave bolts and hoop poles to the value of $6,000, at last contract prices, viz.: Peeled oak bolts, at $5 per cord; unpeeled oak bolts at $4.25 per cord; basswood heading bolts, unpeeled, at $2.50 per cord; basswood heading bolts, peeled, at $2.75 per cord; sound white elm bolts, unpeeled, at $3.50 per cord; soft maple and hackberry, unpeeled, at $3.50 per cord; flat oak bolts, unpeeled, at $4.75 per cord.

" Said *Graham* is to pay said Kingman for his share of rent $300 per annum, payable one-half on July 1, 1874, and balance at the close of the year.

" Said Kingman and *Graham* to run equal partners for the year 1874, each contributing equally, share for share, of the necessary capital required to carry on the business as above stated at Muscoda, Wis., under the name and style of Muscoda

Steam-Mill Company, each sharing equally in profit or loss; each partner's services to be valued equal, and neither of said partners shall draw out of the firm, for personal expenses, more than $100 per month, unless by mutual consent; and said *Graham* is to pay one-half of all repairs of buildings and machinery, not to exceed $400; all over that sum to be paid by said Kingman, who is to use due diligence to keep the machinery in good running order, and said Kingman is to have all in good running order on or before January 1st next.

"It is understood that if either partner contributes more than the other he shall receive interest at ten per cent. per annum from the other partner.

"The contract heretofore existing between Graham & Bremer and said Kingman is hereby rendered null and void. A clerk or foreman, as superintendent, shall be continuously employed by consent of both partners.

"MARSHALL KINGMAN,

"T. J. GRAHAM."

In addition to this the defendants testify that they believed M. Kingman owned the two-thirds of the mill property in fee, and *Graham* swears he would not have entered into the partnership if he had known M. Kingman did not own two-thirds of the mill, and the appellants also testify that they would not have credited M. Kingman had they known he did not own the two-thirds of the mill.

The learned circuit judge has found, from all the evidence in the case, that the allegations of the answer — viz., that down to about the first day of May, 1874, the said plaintiff himself gave out and caused it to be understood and believed, and aided and assisted the said Marshall Kingman to give out to the defendants and to others, and to cause it to be by them understood and believed, that the said Marshall Kingman, and not the said plaintiff, was the owner of said lands and premises; that in consequence of the said representations, statements and conduct of said Marshall Kingman and said

plaintiff after said deed to him, and of their reliance upon and belief in said statements, representations and conduct, and of their belief that he was the owner of said premises, these defendants gave credit to the said Marshall Kingman, and suffered him to become indebted to them in a very large sum; that but for such representations and conduct of said plaintiff, as well as said Marshall Kingman, and their said belief therein and reliance thereupon, defendants would not have given said credit, or any part thereof, to said Marshall Kingman, or suffered him to become so indebted to them — are not substantiated by the proofs; that said credit and the whole thereof was given to said Marshall Kingman upon his own representations, or upon the belief of said *Thomas J. Graham* and *Jacob Bremer* that he (M. Kingman) was able to pay or would pay them, and not on account of the conduct or representations of this plaintiff.

This finding of fact disposes of the whole of the defendants' defense, if it is supported by the evidence; and from a careful reading of the evidence, as it is preserved in the record, we are not prepared to say that it is not sustained; certainly it is not so clearly against the preponderance of the evidence as would justify us in setting it aside, under the rule established by this court in such cases.

But, independent of this finding upon the questions of fact, we are of the opinion that, giving the evidence the most favorable construction in favor of the defendants, yet as a question of law no estoppel has been proved against the plaintiff. It must be remembered that the defendants undertake to estop the plaintiff setting up a title to real estate by matter *in pais*, which title appeared of record in the office of the register of deeds of the proper county at the time the matters *in pais* which are set up as an estoppel occurred, and had been so upon record for two years previous thereto.

In *Brant v. Virginia Coal & Iron Co.*, 93 U. S., 326, the supreme court of the United States use the following language:

" It is difficult to see where the doctrine of equitable estoppel comes in here.    For the application of that doctrine there must generally be some intended deception in the conduct or declarations of the party to be estopped, or such gross negligence on his part as to amount to constructive fraud, by which another has been misled to his injury.    ' In all this class of cases,' says Story, ' the doctrine proceeds upon the ground of constructive fraud or of .gross negligence, which in effect implies fraud; and therefore, where the circumstances of the case repel any such inference, although there may be some degree of negligence, yet courts of equity will not grant relief.    It has been accordingly laid down by a very learned judge, that the cases on this subject go to this result only: that there must be positive fraud or concealment, or negligence so gross as to amount to constructive fraud. . . .    And it would seem that to the enforcement of an estoppel of this character with respect to the title of property such as will prevent a party from asserting his legal rights, and the effect of which will be to transfer the enjoyment of the property to another, the intention to deceive and mislead, or negligence so gross as to be culpable, should be clearly established.' "

This court has adopted the foregoing rule as to estoppel *in pais*, substantially, in *Norton v. Kearney*, 10 Wis., 443, 453; *Vilas v. Mason*, 25 Wis., 310, 323; and *McLean v. Dow*, 42 Wis., 610.    Under this rule we do not find any evidence in the record which brings the plaintiff within it.    He took all proper precautions to give notice of his title to all the world by putting his title upon record in the proper office.    His record title would appear at the same place where his father's title appears.    He did not live within several hundred miles of the property, and had no personal supervision over the same.    His father went into the actual possession thereof immediately after plaintiff purchased of him, as his tenant, and remained in possession as such until long after the transactions which are set up as estopping the plaintiff.    Having placed his title

upon record where it could be seen by all men interested in knowing who owned the property, he could not be prejudiced by any claim of title made by his tenant, and of which he had no knowledge. See *Ford v. Smith*, 27 Wis., 261, 267. The evidence of what took place at the time the contract of partnership was made between the father and *Graham*, is the only evidence which can possibly be construed as in any way tending to prove that the plaintiff knew that his father was making any claim to the ownership of the property. This evidence does not show that the plaintiff was in any way connected with the preliminary negotiations between his father and *Graham* in relation to this partnership, or that he in any way encouraged the parties in entering into it, either before or at the time the contract was made. The evidence as to what took place at the time the contract was made, except what appears from the contract itself, is too indefinite, uncertain and contradictory to base an estoppel as to the title of real estate, under any of the rules laid down by the courts upon this subject. As to the contract itself, there is nothing in it which amounts to a claim on the part of Marshall Kingman that he was the owner in fee of the two-thirds of the mill premises; and there was no reason, therefore, for calling upon the plaintiff to assert his ownership and deny that his father owned the same.

There is another rule which governs as to estoppel *in pais* as to the title to real estate, which is conclusive against the defendants in this action. This rule is also stated in the case of *Brant v. Virginia Coal & Iron Co., supra*, as follows: "It is also essential for its application with respect to the title of real property, that the party claiming to have been influenced by the conduct or declarations of another to his injury, was himself not only destitute of knowledge of the true state of the title, but also of any convenient or available means of acquiring such knowledge. When the condition of the title is known to both parties, or both have the same means of ascertaining the truth, there can be no estoppel."

The cases in the supreme court of Pennsylvania which are cited by the supreme court of the United States as sustaining this rule, hold that when the plaintiff's title appears of record in the proper office, mere silence on his part, when another makes claim of title to the same with a view to have a third person act upon such claim of title, will not estop the plaintiff from asserting his title against the person acting upon such claim of title to his prejudice. In *Knouff v. Thompson*, 16 Pa. St., 357, 364, the court say: "The party who has placed his written title on record, has given the notice which every person is bound to know and respect. The law does not require him to go further. But, if he speaks or acts, it must be consistent with his recorded title. The law distinguishes between silence and encouragement. Whilst silence may be innocent and lawful, to encourage and mislead another into expenditure on a bad or doubtful title would be a positive fraud that should bar and estop the party — the author of that encouragement and deception — from disturbing the title of the person whom he misled, by any claim of title in himself." See, also, *Crest v. Jack*, 3 Watts, 240; *Hepburn v. McDowell*, 17 S. & R., 383. A learned writer, speaking upon this subject, says: "If there is a positive misrepresentation, it in general suffices if it be made either with the intention that another should act upon it, or with knowledge that he is about to act, or under such circumstances that a reasonable man would know that it would be acted upon. No one, however, is under any obligation to exercise care or diligence to prevent another's being defrauded in a transaction to which he is not a party. In this class of cases a person is estopped because he has not spoken when he ought to have spoken. The duty to speak rests *upon the knowledge that another is about to act in ignorance of the truth.* Thus, where the title has been duly recorded, it may fairly be presumed that subsequent purchasers have used the means pointed out by law, and acquired all the knowledge which it is important for them to have, or that they will do

so.   When, however, the owner is directly apprised of the
ignorance of the buyer, and of his purpose to act in such ig-
norance, he cannot claim the benefit of this principle, because
good faith then requires him to speak."

This last rule was held in *Markham v. O'Connor*, 52 Ga.,
183, and is, perhaps, a qualification of the rule stated in cases
cited from the supreme court of the United States and of Penn-
sylvania, and is more strictly in accord with the decisions of
this court also above cited.   Adopting this last statement of the
rule as the true one, we do not see how the plaintiff was called
upon to assert his title at the time the contract of partnership
was entered into by Marshall Kingman and *Graham*.   If, in-
stead of negotiating for the purpose of a partnership, *Graham*
had negotiated with Marshall Kingman for the purchase of
the title in fee, and the plaintiff had sat by and heard Kingman
declare he was the owner, and permitted *Graham* to take a deed
from him purporting to convey the title in fee, and to pay for
the same, as though Kingman was in fact the owner thereof, he
might have been estopped from afterwards asserting his title,
although his deed was on record.   Under such circumstances,
he would probably be within the rule last above stated.   The
fact that the purchase was made and the price paid as though the
one claiming title was the actual owner, might be sufficient notice
to the real owner that the purchaser did not know the real state
of the title, and was purchasing in ignorance thereof, depending
upon the declaration of the party of whom he was making the
purchase, and would require the real owner to assert his title.
Silence under such circumstances would probably be a fraud
upon the purchaser, and estop the party having the real title
from asserting it as against him.   But *Graham* was not ne-
gotiating with Marshall Kingman for a purchase of the land,
nor was he negotiating a contract which made it absolutely
essential that Kingman should have title.   The partnership
was but for one year, and the use of the mill property for the
year was all that was absolutely necessary for the purposes of

such partnership. The right to that use Kingman had, and put into the firm; and, as the evidence shows, the firm had the uninterrupted use of the mill according to the agreement. But it is said that *Graham* would not have entered into the partnership if he had known that Kingman did not own the mill by an absolute title. Admitting this to be so (which, upon the proofs, we think is quite doubtful), there is no evidence in the case which shows that the plaintiff knew of this alleged fact. *Graham* himself does not testify that he made any inquiries as to the ownership of the property in the presence or hearing of the plaintiff, but only says Marshall Kingman stated to him in presence of plaintiff that he owned the two-thirds of the mill. Admitting that this statement was made as *Graham* says it was, it was simply volunteered by Kingman — was not made in answer to any inquiry made by *Graham;* and *Graham*, not having declared either by speech or act that he would not make the partnership agreement unless Kingman had the title in fee, the plaintiff was not bound to assert his title. He had the right to presume that *Graham*, who had lived in the vicinity of the property for several years, and who had come several hundred miles to make a negotiation for a partnership with Kingman in which the use of the mill for a year was necessary to the business of such partnership, had sufficiently informed himself as to the title of the same for the purposes of his contract, or else that it was a matter of indifference to him whether Kingman had title or not, so long as the firm got the use of the same for the year. Under these circumstances the plaintiff was not called upon to assert his title, within the rule above stated.

We have very grave doubts whether the affirmative answer of the defendants sets up any defense to the action of ejectment. It justifies withholding the possession of the premises from the plaintiff on the ground that they hold such possession by virtue of a certificate of sale upon an execution against Marshall Kingman, upon which the time for redemption had

not expired. If the action had been by Marshall Kingman, it is clear the answer would not have been a defense; and we are strongly inclined to the opinion that, if the answer would not be a defense had Marshall Kingman been the plaintiff, it cannot be a defense against his grantee. To have made the defense good as against the grantee, we think that, in addition to showing the deed to the grantee void as to the defendants, either by way of estoppel or otherwise, there should have been a further allegation that they held the possession with the consent or license of Marshall Kingman. But we prefer to put our decision upon the merits of the estoppel set up by the defendants, and do not therefore pass upon this last point.

*By the Court.*— The judgment of the circuit court is affirmed.