## LAMPE vs. KENNEDY and others.

*November 9 — November 21, 1882.*

BOUNDARIES OF LAND. *(1) Immaterial who set stake marking boundary.*
VENDOR AND PURCHASER OF LAND: EVIDENCE. *(2) Destruction of unrecorded deed: burden of showing notice of such deed to subsequent purchaser. (3) Proof that such deed existed.*

1. This court having decided on former appeals in a case involving a dispute as to the boundaries of lots that the location of a certain stake referred to in the first conveyance after the lots were platted, must, if it can be determined, control in fixing the line between the lots of the respective parties, but that if the place where the stake stood cannot be identified, the plat must control,— it is *held* to be immaterial who set the stake by a reference to which such conveyance was made; and an instruction to the jury making it necessary for them to find that the stake was set by certain persons, before they could find it was a controlling monument, is erroneous.

2. The voluntary cancellation or destruction of a deed of conveyance of land, by the agreement of the parties thereto, does not operate to revest the legal title in the grantor. But if such deed had not been recorded, a subsequent purchaser from the grantor, in good faith and for a valuable consideration, whose deed is first recorded, becomes vested with the legal title. And in a contest between such subsequent purchaser and a party not claiming under the grantee in the prior conveyance, the burden is upon the latter of showing that such purchaser had notice of the prior conveyance, or did not pay a valuable consideration for the land.

3. To show that a deed of conveyance of land, which is claimed to have been destroyed, had in fact existed, it is not sufficient that a witness merely state that such a deed was made, without showing the manner of its execution.

Lampe vs. Kennedy and others.

APPEAL from the Circuit Court for *Dane* County.

This is the third appeal in this case. The reports of the case on the former appeals will be found in 45 Wis., 23, and 49 Wis., 601. The following head-note contains a sufficient statement of the case as made by the record on the first appeal: "Persons having mining claims on a certain quarter-section of land, before the same was open to entry, determined by arbitration the boundaries of their respective lots, and had a plat made to show the boundaries thus determined. The quarter-section was then surveyed, and one G., appointed for that purpose by the claimants, entered it for their benefit, and was instructed by them to deed according to the plat to the persons named thereon; and he testifies that in making his deeds he was solely guided by the plat, although it is not referred to in the deeds. The stakes put up to mark the boundaries of the lots, as described in the deeds and designated on the plat, cannot be found; but the boundaries on the plat can be readily ascertained by aid of the government surveys. The plat was never recorded. In a contest as to boundaries between parties claiming under deeds from G. of lots in such quarter-section: *Held*, that the plat should have controlling weight in construing the deeds." This ruling worked a reversal of the judgment, the trial judge having directed a verdict for the defendants, thus disregarding the plat. It was also said incidentally, in the opinion on that appeal, that the trustee, Goodsell, had no authority to change the boundaries as fixed by the plat.

It did not appear that any serious attempt was made on the first trial to prove where the lost stakes, which were set to mark the boundaries of the respective lots, were located. On the second trial testimony was introduced tending to show the precise location of the stake mentioned in Goodsell's conveyance to the defendants' grantors as standing at the northwest corner of Rowell's lot — that being the lot

conveyed by Goodsell to the grantor of the plaintiff. The circuit judge ignored that evidence in his charge, and so instructed the jury that the verdict (which was for the plaintiff) was made to rest entirely upon the survey of the west line of the quarter-section as marked on the plat. This was held erroneous. In the opinion by the present chief justice it is said: "If, in fact, the stake thus referred to in the deed could be found, or the exact spot where it stood could be established to the satisfaction of the jury, it would settle all dispute as to where the northwest corner of the plaintiff's lot was." 49 Wis., 604.

There has been a third trial of the case on substantially the same evidence as was given on the second trial, and the plaintiff has again recovered. The defendants have appealed from the judgment for the plaintiff that he recover the strip of land claimed.

For the appellants there was a brief by *Briggs & Jenks*, and oral argument by *Mr. Briggs*.

For the respondent there were briefs by *W. E. Carter* and *J. P. Smelker*, and oral argument by *Mr. Carter*.

LYON, J. The result of the judgments of this court on the two former appeals is that if the place where the stake stood which is referred to in Goodsell's deed to the grantors of the defendants as at the northwest corner of Rowell's lot can be established, that must control in fixing the line between the lots of the respective parties. But if the place where the stake stood cannot be identified, the plat must control. The last trial of the case appears to have been conducted upon a correct understanding of the former judgments, and the struggle on behalf of defendants was to show that the stake referred to in such deed was located at or very near the west end of the fence mentioned in the same deed as "Rowell's fence." Succeeding in that, the defendants would have been entitled to judgment. Failing to identify

the exact place where the stake stood, the plat must control, and the proof is very strong that in such case the plaintiff is entitled to judgment. The defendants' testimony tends to prove the location of that stake. It was so adjudged on the second appeal on substantially the same testimony, and the point is *res adjudicata* in the case, as long as the testimony remains unchanged. As to the proof required to establish .the location of such stake, the circuit judge instructed the jury as follows: " If you should find from the evidence and all of it, including the parol testimony that has been given by parties who claim to know something about the stake, that there was, at the time the survey and said plat were made, a stake placed by the claimants of the lots now owned by the plaintiff and defendants to fix the northwest corner of the lot now owned by the plaintiff and the southwest corner of the lot now owned by the defendants, or even stuck by the defendants or their grantors to fix the southwest corner of their lot, before claim was made to the Rowell lot, that would be an artificial monument fixing these corners, to which distances marked on the plat on the west line of said quarter-section must yield, and even though one of the said owners may get more land and the other less than is designated on said plat. . . . The plat in evidence is controlling unless you find there was a stake placed there, under the circumstances which I have stated, for the purpose of fixing the corner of the two lots of the plaintiff and the defendants; if so, that must control."

It is entirely immaterial who set the stake which the defendants claimed, and the testimony tended to prove, was the one referred to in Goodsell's deed to the defendants' grantors. The question is, Was that the stake mentioned in the deed? not, Who set it? Yet the instruction made it necessary for the jury to find that the stake was set by the grantors of the parties, or at least by the defendants or their grantors, before they could find that it was a controlling

monument in fixing the boundary between the respective lots of the parties. The testimony as to who set the stake in question is quite vague and unsatisfactory, and that portion of it which may tend to show that it was placed there by any of the persons specified in the instruction seems to be entirely hearsay. The jury may have found that the stake which formerly stood at or near the west end of the fence was the stake specified in the deed of Goodsell as standing at the northwest corner of Rowell's lot, but may have failed to find that it was placed there by any of the persons specified in the instruction. In such case the defendants were clearly entitled to a verdict. Yet under the instruction it became the duty of the jury to return a verdict for the plaintiff, if they were satisfied (as they doubtless were) that the plat gave him the land which he claimed. The instruction is, therefore, erroneous in that particular. The error may have been, probably was, inadvertent, and had the attention of the learned judge been called to it before the jury retired, as was required by the former practice, doubtless he would have corrected it. Whether such correction would or would not have resulted in a different verdict, is not for us to say. It might have so resulted, and that fact demonstrates the materiality of the error.

Another question, which was raised in the argument of this appeal for the first time (so far as we know) in the progress of the cause, requires notice. Goodsell testified that he first deeded what is known as the Rowell lot to Rowell, who subsequently returned it to the witness, and thereupon (presumably at the request of Rowell) he destroyed that deed, and conveyed the same lot to one Barnard. The latter afterwards conveyed the lot to the plaintiff. On this testimony it is now claimed that the legal title to the lot is still in Rowell, and hence that the plaintiff, whatever his equities may be therein, cannot maintain ejectment for it. It is undoubtedly the law that the voluntary cancellation or destruc-

tion of a deed of conveyance of land, by the consent and agreement of the parties thereto, does not operate to revest the legal title in the grantor. Such title will still remain in the grantee. *Parker v. Kane*, 4 Wis., 1; *Wilke v. Wilke*, 28 Wis., 296; *Hilmert v. Christian*, 29 Wis., 104. See, also, *Price v. Osborn*, 34 Wis., 34, and *Bogie v. Bogie*, 35 Wis., 659. This rule of law, however, does not necessarily defeat this action. The plaintiff read in evidence a deed of the lot executed by Goodsell (who, it is admitted, is the common source of title) to Barnard, and a conveyance thereof in fee by Barnard to the plaintiff. These proved *prima facie* that the legal title to the lot is in the plaintiff. The burden was thus cast upon the defendants to disprove his title. It is said in the brief of counsel for plaintiff, and not denied, that both of these deeds were duly recorded. It appears inferentially from Goodsell's testimony that the deed to Rowell was not recorded. It will be assumed for the purposes of this discussion that the former deeds were, and the latter deed was not, of record.

The *onus* of breaking down the plaintiff's legal title, thus *prima facie* established, being with the defendants, they did not go far enough to accomplish that purpose. Under the registry laws, if the plaintiff took his conveyance from Barnard, paying a valuable consideration therefor, and without notice that the unrecorded deed to Rowell ever existed, the legal title is in the plaintiff. Under such circumstances the Rowell deed is void as against the plaintiff. R. S., 641, sec. 2241. Hence, in addition to proving the execution of the Rowell deed, the defendant was required to prove either that the plaintiff did not pay a valuable consideration for the lot, or, if he did, that he took his deed with notice of the Rowell deed. In a case (if such a case can arise) where it is necessary for the plaintiff, in the first instance, to show that the deed under which he claims is paramount to a prior unrecorded deed, in order to make good his

title to land, probably the burden would be upon him to show the facts which render the prior deed void as against him. But here we have no such case. Probably, also, in a contest between two grantees of the same grantor (the last deed being of record and the first unrecorded), the *onus* would be upon the junior grantee to show that he purchased in good faith and for a valuable consideration. But in a contest like this, between the junior grantee and one who does not claim under the first grantee, and where the junior grantee can make a *prima facie* title without recourse to the first deed, we think, as already stated, that the *onus* is upon him who seeks to destroy such title.

These observations are made on the hypothesis that there is proper evidence in the case to show the existence of the deed to Rowell. But such is not the fact. Regularly, after proving the destruction of the instrument, its contents should be proved by the best evidence attainable. Here we have proof that Goodsell made a deed of the lot to Rowell. Instead of giving the contents of the instrument, the witness merely states his conclusion of law that it was a deed, and says nothing of the manner of its execution. This is clearly insufficient. We regret that this protracted litigation cannot be terminated now and here. But no alternative is left us. The judgment must be reversed, and the cause remanded for a new trial.

*By the Court.*— It is so ordered.