GRATZ et al. v. LAND & RIVER IMP. CO. et al.

(Circuit Court of Appeals, Seventh Circuit. October 4, 1897.)

No. 406.

1. EVIDENCE—UNACKNOWLEDGED AGREEMENTS RELATING TO SALES OF LAND.

The Wisconsin statute (Laws 1891, c. 288) declares that all unacknowledged agreements relating to sales of land which have been recorded in the register's office for 20 years may be proved by certified copies, with the same effect as if the instruments had been acknowledged. The act, however, provides that it shall not affect pending suits. *Held*, that the statute was applicable to a suit brought after its passage to quiet title, and incidentally to restrain an ejectment suit, though the latter suit was instituted prior to the enactment.

2. POWERS OF ATTORNEY—DEEDS.

Four persons having taken steps to procure title, as tenants in common, to a section of land, one of them executed a power of attorney authorizing the attorney to convey an undivided one-fourth of such section. By an error or oversight of the land office, title was made to each of a quarter section in severalty. Thereafter each of the grantees made conveyances of their quarter sections to a third party, who then reconveyed to each of them an undivided one-fourth interest in the whole section. Thereafter the attorney, under the power of attorney, executed a conveyance of an undivided one-fourth interest in the entire section. *Held*, that this was an effectual conveyance of such undivided interest, as it carried out the clear intent of the parties at the time it was given.

3. SAME.

A recorded power of attorney to convey certain lands remains in force, as to purchasers in good faith, without notice, from the attorney, though the grantor himself in the meantime conveys the same lands by a deed which remains unrecorded.

4. CONFLICTING DEEDS—PRIORITY OF RECORD—BURDEN OF PROOF.

A junior purchaser, whose deed is first recorded, is presumptively a bona fide purchaser for value, without notice, and the burden of proof to the contrary rests on the senior purchaser, whose deed has not been recorded.

5. CONVEYANCE BY TENANT IN COMMON OF UNDIVIDED ACRES.

A deed by a tenant in common conveying a specified number of acres, undivided, in a tract described, is not void for uncertainty, but is an effectual conveyance of such a proportion of the tract as the whole number of acres conveyed bears to the whole number of acres in the tract, and entitles the grantee to all the rights and remedies incident to the tenancy in common. And, where the tract borders upon a river, such a conveyance includes a proportional interest in the bed of the stream.

Appeal from the Circuit Court of the United States for the Western District of Wisconsin.

Fractional section 16 in township 49 north, of range 14 west, in the county of Douglas and state of Wisconsin, is bounded on the north and west by the St. Louis river and St. Louis Bay. The section was surveyed by the government of the United States in the year 1854, and according to that survey and the plat thereof returned to the general land office of the United States, and filed in the office of the surveyor general, the section contained 522.80 acres of land, as follows: The northeast fractional quarter, 130.25; the northwest fractional quarter, 86.50; the southwest fractional quarter, 146.05; the southeast quarter, 160. Under the school-land grant of the enabling act admitting the state of Wisconsin into the Union, approved August 6, 1846 (9 Stat. 56, c. 89), this section, with others, was granted to the state of Wisconsin for school purposes. On August 4, 1855, Frank Whittaker, William Herbert, Frank Perfect, and Wellington Gregory agreed with M. W. McCracken (for A. S. Mitchell and others), by an instrument in writing under their respective hands and seals, but not acknowledged, and recorded in the register's office of Douglas county on the 9th day of July, 1856,

substantially, that the parties first named should proceed to the capital of Wisconsin, and purchase school section 16, and, upon receiving title thereto from the state, should convey to McCracken or Mitchell, or such others as Mc-Cracken might request, a full, equal, undivided one-half of the section, in fee simple.   McCracken therein agreed to convey to one James A. Markland an undivided sixteenth of an undivided one-half, to be conveyed to him upon payment within one year from that date by Markland of a one-sixteenth part of the expenses incurred by McCracken. On August 17, 1855, Mitchell agreed with McCracken, by instrument under their respective hands and seals (witnessed by Whittaker, but not acknowledged by the parties thereto, and recorded July 24, 1856), that Mitchell, upon payment by McCracken within a year of an amount equal to one-half of the sums paid in that time by Mitchell, to convey to McCracken an undivided half of the undivided half of the section. By these arrangements the title to the section was designed to be vested as follows:

| | | |
|---|---|---|
| A. S. Mitchell, an undivided quarter | 130.70 | acres |
| M. W. McCracken, an undivided quarter | 130.70 | " |
| Herbert, an undivided eighth | 65.35 | " |
| Perfect, an undivided eighth | 65.35 | " |
| Whittaker, an undivided eighth | 65.35 | " |
| Gregory, an undivided eighth | 65.35 | " |
| Total | 522.80 | acres |

The undivided quarters owned by Mitchell and McCracken were subject to the right of Markland to an undivided one thirty-second. December 7, 1855, Herbert and wife executed a power of attorney to Whittaker and Perfect, authorizing them to convey, in whole or in separate parcels, "a certain tract of land, with the appurtenances, whereof we are seised in fee," described as follows: "The undivided one-fourth of the school section in township 49, of range fourteen (14) west." On June 2, 1856, the four pre-emptors executed to Joseph G. Wilson a bond conditioned to convey an undivided one-eighth part of the section when the title should become perfected in them. This instrument was executed on the part of Herbert by his attorneys in fact, and recorded on the 2d day of June, 1856. On June 18, 1856, the state of Wisconsin, by its governor and secretary of state, issued patents for the land in question, as follows: To Herbert, for the northeast fractional quarter of section 16, containing 130.35 acres; to Perfect, the northwest fractional quarter of section 16, containing 86.41 acres; to Gregory, the southwest fractional quarter of section 16, containing 146.05 acres; to Whittaker, the southeast quarter of section 16, containing 160 acres. It would appear that these patents were irregular or invalid because not executed by the commissioners of school and university lands. To cure the error, proper patents executed by the latter officers were issued November 26, 1861, to the same parties, and for the quarter sections as stated. On July 7, 1856, Perfect, Whittaker, Gregory, and Herbert (the deeds of the latter being executed by Whittaker and Perfect, his attorneys in fact) executed to A. S. Mitchell, each, two deeds, which conveyed to him the quarter sections by them respectively entered, thus vesting the entire legal title to the section in Mitchell. At the same time, Mitchell conveyed to Perfect, Gregory, Herbert, and Whittaker, jointly, the undivided half of section 16, the deed reciting, "The intention of this deed being to convey to each of said four parties of the second part, Frank G. Whittaker, Frank Perfect, Wellington Gregory, and William Herbert, the undivided one-fourth part of said undivided half of said section hereby conveyed." By these deeds the title of the section was vested, or supposed to be vested, an undivided one-half in Mitchell, and an undivided one-eighth in each of the four pre-emptors. On July 8, 1856, Herbert deeded to Mitchell "all of his right, title, and interest in section 16, being the undivided one-fourth part of the undivided one-half of the section." This deed was not recorded until July 15, 1856, and was executed by Herbert in person. On July 9, 1856, Herbert, by his attorneys in fact, executed to James A. Markland an undivided one thirty-second part of the section. This deed was recorded the same day. On that day Whittaker, Gregory, Perfect, and Herbert (by his attorneys, Whittaker and Perfect) deeded to Joseph G.

Wilson an undivided one-sixteenth of the section. This deed was also recorded on that day. If the two deeds named take precedence of the deed from Herbert to Mitchell, the latter would own the following interests in the section: An undivided one-half under deeds from all the pre-emptors, 261.40 acres; under deed from Herbert, 40.84 acres; total, 302.24 acres. Mitchell deeded, July 7, 1856, to Joseph G. Wilson, an undivided one thirty-second; on May 4, 1857, to Edmund H. Taylor, Jr., "an undivided fifty-seven acres" of the section; on February 13, 1858, to M. W. McCracken, "the undivided fourth part of section 16, * * * minus eight acres, and supposed to contain 122.70 acres, more or less, and situated on the Bay of St. Louis, in the county aforesaid." This deed purported to be executed and to be received in abrogation of any other deed of land in that section made by Mitchell to McCracken, and in discharge of all bonds given by Mitchell to convey land in that section. February 26, 1861, Mitchell conveyed to certain trustees for Mary B. Mitchell, his wife, and her four children, 114.36 acres, undivided, in section 16, and afterwards, February 19, 1874 (his former wife having died, and he having thereafter intermarried with Nellie D. Mitchell, who joined in the deed), conveyed to certain trustees in trust for the children of Mary B. Mitchell "an undivided interest, amounting to 114.36 acres," in the section. Mitchell died May 1, 1882, and his heirs and the trustees under the trust deed in December, 1882, executed conveyances to Spooner of 106.21 acres, undivided. Upon the assumption that Mitchell acquired from Herbert 40.84 acres, making, with the previous conveyance to him by the pre-emptors, a total of 302.24 acres owned by him, he would seem to have conveyed to his trustees 8.15 acres more than he owned.

The appellee the Land & River Improvement Company acquired the title under these several owners to the 522.80 acres, assuming the validity of the conveyances by Herbert, through his attorneys in fact, to Markland and to Wilson. The appellants represent the interest, if any, existing in Mitchell, his children or heirs, remaining undisposed of. This property remained vacant until the year 1884, and is now incorporated within the limits of the city of Superior. From erosion by the waters of the river or bay of St. Louis, the acreage of the upland is now reduced to 424.98 acres. On April 4, 1887, under a statute of the state of Wisconsin, the commissioners of Douglas county established a dock line in front of this property, which was approved by the United States war department December 5, 1894. The east and south boundary lines of section 16, prolonged to meet this dock line, would include an area of 837.66 acres. It was stipulated as a fact, subject to objection to its materiality, that neither Mitchell nor any of his children supposed that the section in controversy contained more than 522.80 acres, as stated in the government survey, until about the year 1890, when the surviving children were advised by their counsel that the section extended to the thread of the current of the St. Louis river, bounding the section on the northwest. In November, 1890, the present appellants brought ejectment in the circuit court of the state of Wisconsin for the county of Douglas against the present appellees to recover an undivided 11-32 of the section, which suit was removed to the circuit court of the United States for the Western district of Wisconsin. Thereafter, in the year 1892, the appellee the Land & River Improvement Company filed its bill in the latter court to restrain the proceedings in the action at law, and to quiet the title to the section; setting forth at length the history of the devolution of the title, and praying that its title and possession of the premises may be quieted in the complainant by decree of the court, and that the parties defendant to the bill asserting any title or claim to the lands in question may be decreed to release the same to the complainant therein. To this bill the present appellants duly answered, setting forth their claim of title, and they also filed their cross bill, asking that they be decreed to be the owners in common of the undivided 11-32 of the section; that all instruments of conveyance specifying undivided acres of the section shall be equivalent only to a conveyance of an undivided interest, of which the numerator shall be the specified number of acres in the deed, and the denominator the entire acreage of the section, whether upland or overlaid with water; and that their title be quieted as against the claim of all the defendants to the cross bill. This cross bill was duly answered to, and replication filed; and at the hearing a decree was rendered in behalf of the original complainant, the Land & River Improvement Company, the appellee

here, quieting and confirming its title to the section, enjoining the prosecution of the action in ejectment, and decreeing that the appellants have no right, title, or interest in or to any of the land, privileges, appurtenances, or water rights, or any right in the bed of any stream or streams adjoining the section.

I. M. Earle and H. S. Wilcox, for appellants.

John C. Spooner and A. L. Sanborn, for appellees.

Before WOODS, JENKINS, and SHOWALTER, Circuit Judges.

JENKINS, Circuit Judge. It is urged that the court should not consider the record of the unacknowledged agreements of the parties to this title. It is enacted by chapter 288 of the Laws of Wisconsin for the year 1891 that all agreements relating to sales and conveyances of land, or of any interest therein, which have not been acknowledged, but which shall have been recorded in the proper register's office for 20 years, may be proved and admitted in evidence, by the production of the record or a duly-certified copy, with the same effect as if such instrument had been properly acknowledged. The act contains, however, a proviso that its provisions should not affect any pending suit or proceeding. This bill was filed December 15, 1892,—nearly 20 months after the publication of the act. It is true that the action in ejectment was instituted in November, 1890, and prior to the act, but that action and the question of competent evidence upon the trial of that action are not before us. The bill here is one to quiet the title, the restraining of the prosecution of the action at law being merely incidental relief to effectuate the decree in this suit. The act is manifestly applicable here, however ineffectual it might prove to sanction the introduction in evidence of the recorded but unacknowledged agreements upon the trial of the suit in ejectment. We think these instruments are properly before us for consideration, under the provisions of the statute in question.

It is clear that the parties contemplated that the four pre-emptors should obtain the title to section 16 as tenants in common,—each to own an undivided one-fourth. All the agreements speak thus; but when it came to the entry of the land, either because of the custom of the land office of the state, or through error, the title was taken to each quarter section in severalty. Each pre-emptor then conveyed to Mitchell the quarter section entered by him, and Mitchell at the same time conveyed to the four pre-emptors an undivided one-half of the whole, thus placing the title as originally designed. The power of attorney from Herbert to Whittaker and Perfect under date of December 7, 1855, before the legal title was obtained, authorizes a conveyance of a certain tract of land, whereof Herbert was seised in fee, described as the one undivided one-fourth of the section, and was clearly made in view of the agreement of the parties to obtain undivided interests in the section. By the subsequent deeds inter partes the title was placed as originally contemplated. We cannot, therefore, doubt that the power of attorney was effectual to authorize a conveyance of the undivided interest of Herbert. Such was the practical construction placed upon the instrument by all the parties, and Herbert, by his subsequent deed, sanctioned such construction of it. We cannot at this late day give to the instrument the strict construc-

tion contended for, which runs counter to that placed upon it by those interested, and which would be effectual to oppose the clear intent of the parties, and to devest titles acquired in good faith under it.

We proceed to inquire with respect to the validity of the deeds to Wilson and to Markland under this power of attorney. It is objected to their validity that the execution by Herbert to Mitchell of the deed of July 8, 1856, of all his interest in section 16, accomplished the object of the agency created by the power of attorney, terminated the authority of the agents, and that notice of such termination was not essential. The objection cannot be sustained. The power of attorney was recorded, giving notice to the world of the authority of the agents. The law requires that the termination of that authority, to be effective against purchasers in good faith from the attorney, should be likewise recorded. It may be conceded that the conveyance by Herbert, in a sense, terminated the agency, because the subject-matter upon which the agency operated was disposed of by his deed; but, failing the recording of the deed, the termination of the agency was not effective against those dealing in good faith with the agents, for, without notice of revocation, the parties were justified in acting upon the presumption of the continuance of the agency. Hatch v. Coddington, 95 U. S. 48; Insurance Co. v. McCain, 96 U. S. 84; Johnson v. Christian, 128 U. S. 374, 381, 9 Sup. Ct. 87.

It is further objected that the deed from Herbert to Mitchell, being prior in point of time, although subsequent in point of record, was effectual to pass the title of the premises, and was valid against the whole world, except bona fide purchasers for value, without notice, and that the burden of proof with respect to the bona fides of the deeds subsequent in date, but prior of record, is cast upon those claiming under them. This presents a question not altogether without difficulty, and in respect to which the authorities are not wholly at agreement. Jackson v. M'Chesney, 7 Cow. 360; Wood v. Chapin, 13 N. Y. 509; Shotwell v. Harrison, 22 Mich. 410; Hoyt v. Jones, 31 Wis. 389, 404; Lampe v. Kennedy, 56 Wis. 249, 14 N. W. 43; Cutler v. James, 64 Wis. 173, 179, 24 N. W. 874; Prickett v. Muck, 74 Wis. 199, 206, 42 N. W. 256. In the state of New York it is ruled that under the recording act the junior purchaser, whose deed is first recorded, is presumptively a bona fide purchaser for a valuable consideration, without notice, and that the burden of proof to the contrary rests upon the senior purchaser, whose deed has not been recorded. In Michigan it is held that the burden is upon him who claims by virtue of priority of record to show affirmatively the payment of a valuable consideration, but that the burden is upon him claiming under a deed of prior date, but subsequent record, to show that such purchaser under the deed having priority of record had notice of the prior, unrecorded deed. This ruling is founded upon the notion that, the payment of the purchase price being peculiarly within the knowledge of the grantee under the deed having priority of record, the law would not impose the burden of proving the negative fact upon the opposite party. In this case there was a very able and strong dissent by Campbell, C. J., to the effect that there is no ground for any such

distinction, and that the burden rests upon the party claiming under the unrecorded deed. In Hoyt v. Jones the supreme court of Wisconsin for the first time considered the subject, and, in an able opinion by Chief Justice Dixon, concurred with the dissenting opinion of Chief Justice Campbell, and with the decisions of the state of New York, and held that the law would not presume fraud or bad faith on the part of the subsequent purchaser, and that the grantee under the unrecorded deed, being a party in the wrong, by omitting to record his deed, must assume the burden of showing a want of consideration or notice in the purchaser under the deed having a priority of record; and this, we think, is the better rule, because, as suggested by Chief Justice Campbell, any other doctrine would render the registry laws of very little value, especially in a case like the present, in which we are dealing with transactions of over 40 years ago. The witnesses to the transaction may have died, or may have become inaccessible. If the prior, recorded deed was fraudulent, Mitchell had ample means to protect his title by resorting to the courts at a time when the transaction was fresh, and the witnesses to it were living and could be obtained. His delay is that which at this time renders proof difficult, and it seems but just, under such circumstances, that the burden should be cast upon him and those claiming under him, rather than that the law should indulge the presumption that these deeds executed almost simultaneously with Mitchell's were fraudulent. There is no proof here of the time of the delivery of the deed to Mitchell. It was not recorded for a week after its execution. Mitchell and his heirs rely, as they properly may, upon the presumption of law that it was delivered at its date. But, to effectuate that presumption, it seems unjust that we should indulge the further presumption that the grantees of the recorded deed were guilty of fraud, which is never to be presumed. The authority of Hoyt v. Jones is thought to be weakened by the subsequent decisions in the supreme court of Wisconsin, In Lampe v. Kennedy it was ruled that between the subsequent purchaser, whose deed is first recorded, and one not claiming under the grantee in the prior conveyance, the burden is upon the latter to show notice of the prior conveyance, and want of valuable consideration. No one will dispute the correctness of the rule, but Mr. Justice Lyon, after rightly deciding the point, enlarges in the following language:

"Probably, also, in a contest between two grantees of the same grantor (the last deed being of record, and the first unrecorded), the onus would be upon the junior grantee to show that he purchased in good faith, and for a valuable consideration."

This observation is purely obiter, was made without any reference to the prior decision of the court in Hoyt v. Jones, and is not authority. In Cutler v. James the point does not appear to have received much consideration, but the opinion indicates that the burden of proof may be shifted from one party to the other, according to the circumstances of the case. There was no direct evidence on the one side or the other with respect to notice of the prior, unrecorded deed, but certain inferences from the facts indicated want of notice; and the court held that the burden was upon the party claiming under the

prior, unrecorded deed. There was no reference to the case of Hoyt v. Jones. This case supports, rather than questions, the doctrine of Hoyt v. Jones. In Prickett v. Muck the court ruled that, because the defendant was shown to have actual notice of the existence of the will and the death of the testator at the time that he took a conveyance of the property from the grantee in the deed having priority of record, he could not be entitled to the protection of the statute without showing that his grantor was a purchaser in good faith and for a valuable consideration. No reference is made to the case of Hoyt v. Jones, except that it is cited approvingly upon another point. The case seems to have turned largely upon a question of pleading, and there is no indication that the court designed to overrule its former decisions. We are satisfied that the rule in Hoyt v. Jones is the better rule to work out substantial justice. If the rule, however, were otherwise, there are here certain facts, and inferences which we may properly indulge from the facts, which we think should avail to shift the burden upon the appellants, if it originally rested upon the opposite party. The deed to Mitchell is dated July 8th. It was retained from the record until July 15th. On July 9th the two deeds were executed by Herbert, by his attorneys, to Wilson and Markland, respectively, and were recorded on the same day. The four pre-emptors had, on the 2d day of June previous, executed to Wilson a bond conditioned to convey to him an undivided one-eighth part of the section when the title should become perfected in them. This instrument acknowledges the payment of the consideration of $900, was executed on the part of Herbert by his attorneys in fact, and was recorded on the 2d day of June, 1856. By this instrument Wilson obtained an equitable interest in the land, of which Mitchell had constructive notice by the record at the time of the execution to him by Herbert of the deed dated July 8, 1856. We cannot doubt, moreover, that Mitchell had also actual notice of the equitable title of Wilson, and agreed to assume, and did assume, in part, the obligation of the pre-emptors to convey; for on the 7th day of July, 1856, the day previous to the conveyance by Herbert to him, Mitchell conveyed to Wilson an undivided one thirty-second part of the section. This conveyance is by the answer asserted to have been in compliance with the undertaking of Herbert on the bond, but the further allegation that it was in full satisfaction of that obligation is not proven, and cannot be assumed, because it was a conveyance of but one-fourth part of the amount agreed to be conveyed. The two conveyances vested in Wilson an undivided three thirty-seconds of the section, whereas by the bond he was entitled to an undivided one-eighth; and the record does not satisfactorily account for the deficiency, unless it be represented in the deed to Markland made in pursuance of some arrangement between the parties. The consideration stated in the various deeds and in the bond lend some countenance to the view that, as between the pre-emptors and Mitchell, one-half of the equitable right of Wilson was by agreement imposed upon the undivided half which was conveyed to Mitchell. In this connection the language of the deed by Herbert to Mitchell is not without significance. There is enough, however, to show that Mitchell had

both constructive and actual knowledge of the equitable rights of Wilson, and took the title from Herbert subject to them. We perceive, therefore, no reason upon which the conveyance to Wilson under power of attorney can, upon this record, be successfully impeached; and we, think, aside from any general rule, that the circumstances cast the burden of proof upon those claiming under the deed prior in date but subsequent of record.

The equities with respect to the deed to Markland are less clear and strong, but we think there is sufficient to impose the burden of proof upon the claimants under the unrecorded deed. There does not appear, it is true, to have been any written agreement by Herbert to convey to Markland; but before the entry of the land there was an agreement by McCracken to convey to Markland an undivided one thirty-second part of the section, upon payment of a certain proportion of the expense to be incurred. This appeared in the agreement with the original pre-emptors, and it is under this agreement that Mitchell obtained his title. Wilson did not obtain all the land to which he was entitled, and for which he had paid. An undivided one thirty-second part was retained, which corresponds with the amount agreed to be sold to Markland upon payment by him of his proportionate part of the expenses incurred. The land was entered at the price of $1.25 an acre, and Markland was entitled to receive 16.33 acres. The consideration mentioned in the deed from Herbert to him was $20. We cannot, of course, say that there was an arrangement between Mitchell, Markland, McCracken, and Herbert by which the obligation to convey to Markland was imposed upon Herbert, but the indications point in that direction. Mitchell, in conveying to McCracken the undivided one-fourth of the section, retained eight acres,—just one-half of the acreage to which Markland was entitled,—which would indicate that McCracken and Mitchell each assumed the obligation to convey to Markland one-half of the amount to which he was entitled. At this late day it doubtless would be impossible to ascertain with precision just what was agreed between the parties. It is pertinent to observe that down to the time of his death, in 1882, Mitchell claimed to have no remaining interest in the section, and to have conveyed all his interest in trust for his children. This deed, it is true, upon the assumption of the validity of the deeds to Markland and to Wilson, conveyed 8 acres more than he owned; but, if he had claimed those deeds to be void, there would have remained 16.33 acres unconveyed by the trust deed. It is not surprising that transactions of nearly 50 years ago, and with respect to lands of but nominal value, should be obscure and inexact. We think there is enough to show that Mitchell had recognized this deed to Markland to such an extent that the burden of proving that it was not executed for a valuable consideration is imposed upon those claiming under him, even if we are incorrect in the assumption that the burden of proof in the first instance rests upon those claiming under the unrecorded deed. In this view of the case, Mitchell acquired title to 302 acres and a fraction of the land, the title to all of which, by mesne conveyances, became vested in the Land & River Improvement Company, one of the appellees.

It is urged by the appellants that the deeds to Mitchell, to Taylor, to McCracken, and to the trustees for the benefit of Mitchell's children, and from the latter to Spooner, conveying undivided acres in the section, are void for uncertainty. The contention cannot be sustained. The grantee in such deed acquires an interest in the whole tract as tenant in common, and in the proportion which the number of acres conveyed bears to the whole number of acres in the tract, and entitles the grantee to all the rights and remedies incident to the tenancy in common. Freem. Co-Ten. § 96. Thus, in Gibbs v. Swift, 12 Cush. 393, the deed conveyed 211 undivided acres out of a tract of 1,878 acres, and the court ruled:

"It gave him a share, as co-tenant in common of the whole tract, in the proportion which 211 bears to 1,878."

In Battel v. Smith, 14 Gray, 497, there were deeds of "two and one-quarter acres, undivided, in lot 17"; "three and a quarter acres, more or less, in number 17"; part of "twenty acres and sixty rods in common pasture, lying in common with other proprietors"; and "two and a half acres of land" in the southeast division of common pasture, "in lot number 17, and is undivided." The court observed:

"By these deeds we think it clear that the grantors intended to convey an undivided interest in the whole of lot number seventeen, in the proportion which the number of acres specified and granted by the deed bears to the whole quantity of land contained in that lot. The use of the word 'undivided' and the phrase 'lying in common' shows that the interest conveyed was undivided and in common, and not an estate in severalty, and the quantity of land granted is ascertained and fixed with certainty by the grant of a designated aliquot part of the whole land owned in common."

To this effect is Jewett v. Foster, Id. 495.

In Small v. Jenkins, 16 Gray, 155, there was a conveyance of 1,750 acres, undivided, out of an estate of 14,000 acres held in common with other persons, no share in which had been set off in severalty. The court said:

"Instead of expressing in the deed in express words or terms the part or proportion of their interest which they intended to convey, this was done indirectly, but just as intelligibly and effectually, by a conveyance of a specified number of acres. They conveyed 1,750 acres, undivided, so that, if the whole tract consisted of 14,000 acres, the conveyance was of 1,750-14,000 parts of it."

See, also, Jackson v. Livingston, 7 Wend. 136; Corbin v. Jackson, 14 Wend. 619; Schenk v. Evoy, 24 Cal. 110; Sheafe v. Wait, 30 Vt. 735.

It is further urged that these undivided acre deeds conveyed only the number of acres designated, and did not grant an interest in the land under water. It is settled that the extent of the title of a riparian owner to the bed of a river is one of local law (Hardin v. Jordan, 140 U. S. 371, 11 Sup. Ct. 808, 838; Illinois Cent. R. Co. v. Illinois, 146 U. S. 387, 13 Sup. Ct. 110; Shively v. Bowlby, 152 U. S. 1, 14 Sup. Ct. 548), and that in the state of Wisconsin the riparian owner takes title to the bed of the river to the thread of the stream (Norcross v. Griffiths, 65 Wis. 599, 27 N. W. 606). It is thereupon insisted for appellants that the conveyance of an undivided number of acres of upland carries with it no title to the bed of the river, that the lan-

guage of the deed should not be enlarged to include more than the specified number of acres, and that at the most, if the grantee in an undivided acre deed is to be deemed a tenant in common, his interest is to be computed, not with reference to the acreage in the uplands, but with reference to the combined acreage of the upland and the bed of the stream to midchannel.     We concur with the supreme court of Massachusetts (Battel v. Smith, 14 Gray, 497, 499) that by such conveyances as those in question "the grantors intended to convey an undivided interest in the whole" of the lot, "in the proportion which the number of acres specified and granted by the deed bears to the whole quantity of land contained in that lot."   In other words, we think that Mitchell intended to convey to Taylor 7-64, to McCracken 15-64, and that the heirs of Mitchell intended to convey to Spooner 13-64, which, with the 2-64 conveyed by Mitchell to Wilson, would aggregate 37-64, or 302.24 acres, the total of Mitchell's holding.     He therefore was correct in his assertion that he had disposed of his entire interest, unless the undivided acre deeds take no interest in the bed of the stream.   We are of opinion that this latter suggestion must be resolved in favor of the appellees.   The nature of the title to the bed of a stream or to a highway is peculiar.   It is burdened in the one case with the paramount right of navigation, and in the other with the superior right of traffic, and of those uses to which the public may rightfully put a highway, which are so numerous and burdensome that it has been declared that there is no substantial difference between streets in which the legal title is in the private individual and those in which it is in the public, as to the rights of the public therein.   Barney v. Keokuk, 94 U. S. 324; City of La Crosse v. Cameron; 25 C. C. A. 399, 80 Fed. 264.   So that it has come about, as expressed by Judge Redfield in Buck v. Squiers, 22 Vt. 484, 495, that:

"In ninety-nine cases in every hundred the parties, at the time of the conveyance, do not esteem the land covered by the highway of any importance either way; hence they use the words naturally descriptive of the prominent idea in their minds at the time, and in so doing define the land which it is expected the party will occupy and improve."

See, also, Wallace's American notes to Dovaston v. Payne, 2 Smith, Lead. Cas. 90.   In the state of Wisconsin we therefore naturally find that the rule is established that a grant of land bordering upon the highway, one specified boundary of the premises conveyed being the south line of the street upon which the lot abuts, in the absence of other words of exclusion, carries the fee to the center of the street. Kneeland v. Van Valkenburgh, 46 Wis. 434, 1 N. W. 63.   And, in respect to land bounded upon a navigable stream, a conveyance thereof by metes and bounds, without mention of the stream, but which included the whole of the bank of the stream along the whole length of the part conveyed, was presumed to have been intended to convey, and was held to have conveyed, all the rights of the grantor to the bed of the stream in front of the described land to the middle of the stream, and that such presumption can be rebutted only by an actual reservation in the deed, or by evidence of such circumstances attending the making of the conveyance as clearly show an intention to limit

the ground to the exact boundary fixed by the description. Norcross v. Griffiths, 65 Wis. 599, 27 N. W. 606. It is there ruled that the owner of the bank is presumed to be the owner of the stream, and that, while the ownership of the bed of the stream may be separated from the ownership of the bank, such intention must explicitly appear by the grant, to overcome the presumption. In the light of these authorities, we have no difficulty in reaching the conclusion that the bed of the stream passed with the conveyance of the upland. We have shown that the undivided acre deeds constitute the grantees tenants in common with the other owners in this section. It is clear that the extent of their ownership was in proportion to the whole number of acres within the meander line. We do not overlook the fact that the meander line is not the boundary of the lot, but it was a line within the contemplation of the parties, by which to designate and ascertain the extent of the interest conveyed. There are no words of reservation which exclude the bed of the stream. The presumption must therefore obtain that it passed with the bank, and the evidence is clear that it was designed so to pass. The decree is affirmed.