WILLIAMS, Appellant, vs. J. L. GATES LAND COMPANY, imp.,
Respondent.

*March 15—April 5, 1911.*

*Tax titles:* Bona fide *purchaser: Limitation of actions: Estoppel:
Fraud: Appeal: Affirmance.*

1. The grantee in a tax deed is not a *bona fide* purchaser of the land.
2. The application of a statute of limitations cannot be avoided by
   showing facts that might ordinarily constitute an estoppel *in
   pais.*
3. One D., the grantee in a tax deed, duly recorded but voidable for
   irregularities, conveyed the land to plaintiff by a special war-
   ranty deed. Afterwards the defendant, the original owner, re-
   quested a quitclaim deed from D.; and, without informing de-
   fendant that he had already conveyed the land, but knowing
   that such conveyance was unrecorded and that he was liable to
   an action of ejectment and for costs if the tax deed were shown
   to be void, D. executed to defendant a quitclaim deed, reciting
   therein that he claimed no interest in the land and that he exe-
   cuted the deed as matter of courtesy and without asking or re-
   ceiving consideration therefor. Thereafter D., who was an at-
   torney at law, informed plaintiff of the quitclaim deed and ad-
   vised her that it would not affect her rights under her unre-
   corded deed; and plaintiff refrained from putting her deed on
   record or going into possession or paying any taxes on the land
   or doing anything else which would lead defendant to suspect
   that a hostile claim was made, until after the three-year statute
   of limitations had run upon the tax deed. Defendant, being
   lulled into security and relying upon the quitclaim deed from D.,
   commenced no action to set aside the tax deed, and paid the sub-
   sequent taxes on the land. In an action by plaintiff to quiet her
   title, it is *held* that she is estopped to assert any title under her
   deed as against the defendant.
4. If the judgment of the trial court is right it will be affirmed on
   appeal, although the reason given therefor was incorrect.

APPEAL from a judgment of the circuit court for Eau
Claire county: E. RAY STEVENS, Judge. *Affirmed.*

On May 28, 1898, the *J. L. Gates Land Company* was the
owner of 120 acres of land situated in Eau Claire county,
which land was wild and unoccupied and remained so until

June 1, 1904. On May 31, 1901, Eau Claire county issued
a tax deed to Lelon A. Doolittle on said land, which deed was
based on tax-sale certificates from the year 1898, issued be-
cause of the nonpayment of the taxes on said land. The tax
deed was recorded May 31, 1901, but was voidable for irregu-
larities in the proceedings leading up to its execution, pro-
vided suit had been brought to set aside the same before the
running of the three-year statute of limitations thereon. On
April 22, 1902, Doolittle, for a good and valuable considera-
tion, deeded the land to the plaintiff by a special warranty
deed, which deed was not placed on record until May ·31,
1904. On July 12, 1902, the *J. L. Gates Land Company*
wrote Doolittle calling his attention to the aforesaid tax deed
and stating that it was the owner of the lands described
therein and further stating:

"We should like to get our title perfected by getting quit-
claim deed from you at some nominal amount. Will pay
whatever is right. Kindly let me hear from you at your
early convenience."

Mr. Doolittle made the following notation at the foot of
this letter: "I claim no interest in the above mentioned lands,"
and signed this statement and returned the letter to the *J. L.
Gates Land Company.* On July 17, 1902, the *J. L. Gates
Land Company* wrote Mr. Doolittle as follows:

"I enclose you herewith a quitclaim deed of the E. $\frac{1}{2}$ N. W.
and S. W. N. E. 2–27–5. This is the land I wrote you
about the other day, and received reply that you claimed no
interest. To avoid any possible cloud upon the title, kindly
sign and execute the enclosed quitclaim and return to us as
soon as convenient."

Mr. Doolittle drew a line with pen and ink through the
words in the deed reciting the receipt of consideration and in-
terlined in their place the words "as a matter of courtesy."
After the descriptions contained in the deed he added the fol-
lowing: "Grantors claim no interest in this land, and execute
this deed without asking or receiving valuable consideration

therefor." Mr. Doolittle and his wife executed and acknowledged the deed in its changed form and returned the same to the *Gates Land Company* with the following letter: "I return you herewith, duly executed, quitclaim deed which you sent me a few days ago." The *Gates Land Company* recorded this deed on July 25, 1902. Within a short time after the execution of this deed Doolittle informed the plaintiff's agent, who had entire charge of the land for her, of the phraseology used in the execution of the deed to the *Gates Land Company* and of the facts in regard to its execution. Mr. Doolittle was a practicing lawyer in the city of Eau Claire and advised the plaintiff's agent that such deed would not affect the plaintiff's right under her unrecorded deed. The evidence also tended to show that George W. Williams, the husband of the plaintiff, and her agent in the transaction with Doolittle, was interested to some extent with the latter in tax-title lands. The *Gates Land Company* relied on the quitclaim deed received from Doolittle and commenced no action to set aside the tax deed of May 31, 1901, and paid the taxes on the land involved from the year 1901 to the year 1907 inclusive.

The plaintiff never paid any taxes on the land, but her agent acting for her examined the records each year to see whether or not the taxes had been paid. Some time after May 31, 1904, when the plaintiff recorded her deed from Doolittle, she entered into the actual possession of the land, but prior to the date of the recording of the deed she took no action that would in any way inform the *Gates Land Company* of her claim to or interest in the lands, and there was nothing of record that gave any notice to the *Gates Land Company* of such claim. This action was commenced by the plaintiff on November 18, 1907, to quiet her title to the lands in question. The *J. L. Gates Land Company* pleaded the foregoing facts by way of defense and also by way of counterclaim and asked for affirmative relief barring the plaintiff from claiming any interest in the lands and affirming the title thereof to be in

the *J. L. Gates Land Company*. Judgment was entered in favor of the *J. L. Gates Land Company*, and plaintiff appeals from such judgment.

For the appellant the cause was submitted on the briefs of *R. D. Whitford*, attorney, and *L. A. Doolittle*, of counsel.

For the respondent there was a brief by *Sturdevant & Farr*, and oral argument by *L. M. Sturdevant*.

BARNES, J. The circuit court found that the deed executed by Doolittle to the *J. L. Gates Land Company* was executed and delivered for the purpose of inducing the said company "to rely upon it, and to refrain from bringing suit or making further demand upon said Doolittle with reference to the title of said land." Further, "that plaintiff, knowing all the facts about the execution of the deed to the *Gates Land Company* by said Doolittle, kept her deed from the record and refrained from in any way informing the *Gates Land Company* of her claim, for the purpose of inducing the *Gates Land Company* to rely upon its deed from said Doolittle until the voidable tax deed upon which plaintiff's title is based was protected by the three-year statute of limitations." Also, "that the acts and conduct of the plaintiff and of her agent have misled the *Gates Land Company* to its injury and damage; that, relying on said deed from the defendant Doolittle, it did not bring an action to set aside the voidable tax deed upon which plaintiff's title is based, as it would have done within three years of the date of such deed had it not been misled by such acts and course of conduct; that said acts estop the plaintiff, and make it inequitable and unjust that the plaintiff be now permitted to have the benefit of the three-year statute of limitations in protecting her title under said tax deed of May 31, 1901."

Mr. Doolittle testified that at the time of his correspondence with the *Gates Land Company* he knew of the passage of ch. 152, Laws of 1901, under which an action in ejectment

might be maintained against him even though he had conveyed the lands, so long as his grantee refrained from recording her deed, and that if the tax deed were shown to be void in such action he would be liable for costs. The facts and circumstances shown demonstrate that both Doolittle and the agent of the plaintiff had a well grounded suspicion that the tax deed could be set aside if an action were brought for that purpose before the expiration of the three years from the date of the recording of the deed. Doolittle's statement that he claimed no interest in the land did not necessarily mean that he had conveyed it away. It would have been an easy matter for him to say so if this were the impression he intended to convey. It was an entirely reasonable conclusion for the *Gates Land Company* to draw that Doolittle considered his deed void and did not wish to run any risk of being sued in ejectment and mulcted in costs, and that he disclaimed interest for this reason. The conclusion is irresistible that the thing wished and hoped for by Doolittle and *Williams* happened, and that was that the *Gates Land Company* should be lulled into security by the Doolittle deed and should refrain from taking any steps to declare void a deed which was voidable, until such time as the statute graciously intervened to save them from an embarrassing situation. The plaintiff, with knowledge of what transpired between Doolittle and the *Gates Land Company*, carefully refrained from putting her deed on record while the statute was supposed to be running, and prudently refrained from going into possession of the lands or paying any taxes thereon or doing anything else that might arouse a suspicion on the part of the *Gates Land Company* that some hostile claim was being made.

Doolittle was not a *bona fide* purchaser of the land. *Gould v. Sullivan,* 84 Wis. 659, 54 N. W. 1013; *Brown v. Cohn,* 95 Wis. 90, 69 N. W. 71. Plaintiff knew she was purchasing a questionable title from Doolittle, if she paid any attention to it at all. She got what Doolittle had—nothing more and

nothing less.    He had.practically nothing except by the grace of the statute of limitations, and both Doolittle and the plaintiff apparently intended to nurse things along as best they might so as to create the impression with the *Gates Land Company* that it had nothing to worry over in reference to its title, and at the same time yield nothing that would prevent the plaintiff from claiming the benefit of the statute if the *Gates Land Company* were lulled into security.    In fact Mr. Doolittle testified that his purpose was to make such a deed as would satisfy the *Gates Land Company* and at the same time do nothing that would work to the detriment of his grantee, *Williams,* or prevent the statute from running on the tax deed, and he says he did so because he did not wish to render himself liable to the plaintiff under his special warranty deed and at the same time wanted to prevent the *Gates Land Company* from bringing a suit and securing a judgment against him for costs.

The trial court held that the plaintiff was estopped from claiming any benefit from the statute of limitations.    We are unable to concur in this view although it finds support in some of the decided cases.    No good reason is apparent why this statute should not be here applied in the same way that such statutes generally are.    It has been repeatedly held that the application of a statute of limitations cannot be avoided by showing facts that might ordinarily constitute an estoppel *in pais.    Boyd v. Mut. F. Asso.* 116 Wis. 155, 90 N. W. 1086, 94 N. W. 171; *Pielsch v. Milbrath,* 123 Wis. 647, 101 N. W. 388, 102 N. W. 342; *Guile v. La Crosse G. & E. Co.* 145 Wis. 157, 130 N. W. 234.

But while we do not agree as to the ground upon which the decision was based, we think the conclusion reached was correct and that the facts found by the court estop the plaintiff from claiming or asserting any title under her deed as against the *Gates Land Company.*    Doolittle and *Williams,* by their acts and their conduct, intended to and did mislead the *Gates*

*Land Company* to its detriment and to their benefit. They were silent when they should have spoken and should not be permitted to profit by the artifice adopted. There are many cases in this court where parties have been held estopped and where the facts constituting the estoppel were by no means as strong as they are here. *Two Rivers Mfg. Co. v. Day,* 102 Wis. 328, 78 N. W. 440; *Kingman v. Graham,* 51 Wis. 232, 8 N. W. 181; *Marling v. Nommensen,* 127 Wis. 363, 106 N. W. 844; *Loizeaux v. Fremder,* 123 Wis. 193, 101 N. W. 423; *McCord v. Hill,* 117 Wis. 306, 94 N. W. 65. The estoppel should be held to apply to the plaintiff as well as to Doolittle. *Wis. O. L. Co. v. Laursen,* 126 Wis. 484, 105 N. W. 906; *Lyndon L. Co. v. Sawyer,* 135 Wis. 525, 116 N. W. 255; *Kaehler v. Dobberpuhl,* 56 Wis. 480, 14 N. W. 644; *Kaehler v. Dobberpuhl,* 60 Wis. 256, 18 N. W. 841. There are other considerations which might well preclude the plaintiff from recovering in this action, but they have not been argued and it is unnecessary to discuss them.

