MARINER and another, Executors, Appellants, vs. CITY OF MILWAUKEE, Respondent.

*April 10—October 3, 1911.*

*Taxation: Duty of property owner: Municipal corporations: Title to land: Estoppel.*

1. Taxes are debts due the government which the property owner has no more right to withhold than the most sacred debt of a private nature.
2. One who acquired a tax title to a lot, based upon a sale for the taxes of the year in which the city purchased the said lot, and who—knowing all the time that the city claimed title and had not taxed and was not taxing the lot (which latter fact he carefully ascertained from year to year)—refrained for thirty-two years from asserting his ownership or doing anything to suggest that he claimed title or that the lot was taxable, is estopped from thereafter asserting title as against the city.

APPEAL from a judgment of the circuit court for Milwaukee county: W. J. TURNER, Circuit Judge. *Affirmed.*

This is an action in ejectment, originally brought by Ephraim Mariner, now deceased, to obtain possession of lot 5 of block 174 of the city of *Milwaukee.* The plaintiff claimed title to said lot by virtue of two tax deeds, one issued by the city of *Milwaukee* and the other by the county of Milwaukee on account of taxes for the year 1854. Defenses were inter-

posed on the ground that the lot was not taxable in the year 1854 because owned by the city, and because the interest of the tax-title claimant was acquired by condemnation proceedings in the year 1854, and because the plaintiff was estopped from claiming title against the city. At the close of the testimony the court directed a verdict in favor of the defendant. Since the action was tried the plaintiff died, and the case has been revived in the name of the executrix and executor of his estate. The appeal is taken from the judgment dismissing the complaint.

*Frank M. Hoyt,* for the appellants.

For the respondent there was a brief by *Daniel W. Hoan,* city attorney, *Wm. H. Timlin, Jr.,* special assistant city attorney, and *Mark A. Kline,* assistant city attorney, and oral argument by *Mr. Timlin* and *Mr. Kline.*

The following opinion was filed May 2, 1911:

BARNES, J. The appellants maintain that the lot in question was subject to taxation on August 31, 1854, when the assessment roll was confirmed by the common council as provided by the city charter, and that therefore the tax deeds issued by the city and county of Milwaukee on account of the taxes of 1854 are valid. Plaintiffs claim title under these tax deeds. The defendant contends that the lot was not subject to taxation in 1854 because it became the property of the city before its status for the purpose of taxation became fixed. The defendant claims title by virtue of a warranty deed from one Cole, dated August 25, 1854, and relies on the presumption that such deed was delivered on the day of its date. The plaintiffs contend that the evidence offered rebutted the presumption of delivery and showed affirmatively that this deed was not delivered until December 28, 1854, and furthermore that the proof wholly failed to show that Cole had any title to the lot. The city further contends that

it secured title by condemnation proceedings as early as August 15, 1854, when the final order in the proceedings was entered. The plaintiffs meet this claim by saying that the condemnation proceedings were void for jurisdictional defects therein, and if not void they were abandoned; and, in any event, under the statute by which the city exercised the right of condemnation (ch. 171, P. & L. Laws of 1853), it could not acquire title to the lot or appropriate it until the damages awarded had been paid, and that no damages had been paid prior to December 28, 1854. The city further contends that, assuming the lot to have been taxable in 1854, the interest of the tax-title claimant was acquired by the condemnation proceedings; and, finally, that the plaintiffs are estopped from asserting title against the city under the tax deeds. The conclusion reached by the court renders it necessary to discuss but a single one of the many interesting questions raised and argued.

It appears without dispute that Ephraim Mariner, now deceased, knew as early as 1870 that the city claimed title to this lot. Knowing this fact he purchased the outstanding tax-title interest in 1876. Thereafter he watched to see that the lot had not been assessed, and knew that it was not being taxed. He never took any steps to settle the question of title and never invited the city to assess the lot for the purposes of taxation, and never took actual possession thereof or did anything to lead the officers of the city to suppose that he claimed title to this lot, until the latter part of the year 1908, when it became known that the city proposed to use it for the purpose of erecting a garbage crematory thereon. It appears affirmatively that during the thirty-two years from the date of the purchase of the lot by Mr. Mariner until this controversy arose the lot was not taxed. It appears inferentially that it had not been taxed for a period of over fifty years in the aggregate. It would be no invasion of the domain of

common knowledge to say that during the thirty-odd years that Mr. Mariner claimed to own the lot the taxes thereon with the prevailing rates of interest added thereto would, if the lot had been taxed, amount to a sum approximating its entire value, if indeed it would not exceed such value. Mr. Mariner benefited himself or his estate by his silence and inaction to the extent of that sum whatever it might be, if he was the owner of this lot at the time of his death. The city has lost, or it would be more accurate to say that the other taxpayers of *Milwaukee* have been required to make up, this sum. It is a duty which every citizen owes to the state to pay taxes on his taxable property for the protection which the state affords to his person and property and the benefits it otherwise confers upon him. After the lapse of more than one half a century and after the tax deeds based on the tax of 1854 had apparently been forgotten by every one except Mr. Mariner, it is contended that his heirs have an unincumbered title to the property. The lot was sold in 1854 for city taxes aggregating $1.75 and for county taxes amounting to $1.96. The city paid Cole $800 for the lot in 1854, and Mr. Mariner paid $250 for the tax-title interest therein in 1876.

Do the facts shown estop the plaintiffs from asserting title as against the city? Was Mr. Mariner silent when he should have spoken? As before stated, Mr. Mariner knew that the city claimed title to the lot. Acting upon the assumption that it was the owner it did not tax the property. He carefully ascertained this fact from year to year. He asserted no acts of dominion or ownership over the property so as to advise any one that he claimed title thereto. He never suggested to the proper city officials that the lot was taxable and he instituted no action to settle the question of title. It is perhaps difficult to find adjudicated cases presenting substantially similar facts. None have been cited in the briefs and we have discovered none. The question must be decided by

applying to the concrete case before us those general principles of the law of estoppel that are well settled.

Taxes are debts due to the government which a property owner has no more right to withhold than the most sacred debt of a private nature. *Warden v. Fond du Lac Co.* 14 Wis. 618, 619; *Peters v. Myers,* 22 Wis. 602; *State ex rel. Davis & S. L. Co. v. Pors,* 107 Wis. 420, 425, 83 N. W. 706.

It is well settled that if an owner of property stands by and sees another mortgaging or selling it as his own, without giving the purchaser or mortgagee any notice thereof, such owner is estopped from asserting title as against such purchaser. It is, of course, true that in such a case the rights of a third person who deals innocently with the property are involved. But where a municipal corporation in good faith acts on a mistaken assumption for a long series of years, and a taxpayer knows that it is acting on such an assumption and remains silent, and in fact takes an involuntary contribution from the municipality from year to year, he is pursuing a course of conduct that is hardly consistent with fair dealing. We think it was incumbent on Mr. Mariner within some reasonable time to notify the city of his interest in the lot and to call its attention to the fact that the same had not been assessed. Instead of doing this he allowed the city to treat the lot as its own, and has in effect deprived it of a large amount of revenue. We think at this late day his representatives should be held estopped from asserting title to the lot as against the city. We cite the following cases as sustaining the conclusion reached: *Williams v. J. L. Gates L. Co., ante,* p. 55, 130 N. W. 880; *Two Rivers Mfg. Co. v. Day,* 102 Wis. 328, 78 N. W. 440; *Kingman v. Graham,* 51 Wis. 232, 8 N. W. 181; *Marling v. Nommensen,* 127 Wis. 363, 106 N. W. 844; *McCord v. Hill,* 117 Wis. 306, 94 N. W. 65; *Wis. Oak L. Co. v. Laursen,* 126 Wis. 484, 105 N. W. 906; *Lyndon L. Co. v. Sawyer,* 135 Wis. 525, 116 N. W. 255; *Kaehler v. Dobberpuhl,* 56 Wis. 480, 14 N. W. 644; *S. C.* 60 Wis. 256,

18 N. W. 841. It is not claimed that these cases are similar in their facts to the one before us, but they show situations where parties have been held estopped under circumstances presenting no stronger equitable consideration than does the instant case.

*By the Court.*—Judgment affirmed.

A motion for a rehearing was denied October 3, 1911.