HUSTIS and another, Appellants, vs. McWILLIAMS and another, Respondents.

*October 20—November 15, 1921.*

*Estoppel: Failure to assert title: Innocent purchasers: Duty to make search of. records.*

1. In ejectment by the daughters of defendants' predecessor in title, claiming as beneficiaries under the will of their mother, where plaintiffs, when they signed a lease of adjacent lands to their father's grantee, knew of the prior deed to the property in question to such grantee and that testatrix had been adjudged the owner in fee of such property, but did not repudiate the deed nor assert title until commencement of the action, they were estopped to do so as against an innocent purchaser for value.

2. The evidence relative to the estoppel of plaintiffs to claim title is *held* to show that their father's grantee did not know, at the time of the conveyance to him, that testatrix had been adjudged the owner of the land, and that, in ·view of the grantee's knowledge of transactions regarding the property by plaintiffs' father and the relationship of the parties, he was not bound, as against plaintiffs, to search for a title they did not assert.

APPEAL from a judgment of the circuit court for Fond du Lac county: CHESTER A. FOWLER, Circuit Judge. *Affirmed.*

The two plaintiffs, sisters, daughters and beneficiaries under the will of Laura A. Hustis, the wife of one John Hustis,

also now deceased, have brought this action of ejectment to determine the question of the ownership of two pieces of land each twenty-five feet square in the village of Hustisford, Dodge county. These two pieces are portions of what was known as government lots 4 and 5, lot 4 being on the east side and lot 5 on the west side of Rock river, all in the north half of the southeast quarter of section 9, township 10 north, range 16 east, Dodge county. They have appurtenant to them the right to the dam there built and the water power thereby created, except such of the latter as has been previously conveyed.

The premises in question and a great deal more, including that from which the present village of Hustisford was subsequently platted, were in 1841 patented to said John Hustis and the patent therefor subsequently duly recorded.

In 1845, by an act of the territorial legislature, a charter was granted to John Hustis, his associates, successors, and assigns, to build and maintain a dam across the Rock river in the said north half of the southeast quarter of section 9 on lands owned by him. Such dam was built at a point a little north of the present location, then one built at its present location on the lands now here involved and the former one abandoned. Substantially all the water power created by such dams was subsequently conveyed to the owners of two mills respectively, one known as the Koch mill and the lower as the Dehne mill.

In March, 1858, this north half of the northeast quarter of section 9 was sold by the sheriff of Dodge county on an execution issued against John Hustis on a judgment recovered against him by one Wood. Wood assigned the certificate of sale to one James Ludington, brother of Laura A. Hustis. In 1860 the sheriff of Dodge county, pursuant to such sale, issued his deed for government lots 4 and 5 (it being conceded they were included in the said southeast quarter of section 9) to said Ludington, who in November of that year conveyed said lots 4 and 5 and other lands to said Laura A. Hustis.

The lands in question were on several occasions sold for nonpayment of taxes and tax deeds issued, and the interest, if any thereby acquired, subsequently conveyed, but no further statement is deemed necessary with reference to any question of title arising therefrom.

By a fire in September, 1877, the records kept in the office of the register of deeds of Dodge county were entirely destroyed.

December 26, 1900, Laura A. Hustis died testate, her will was duly probated, and the plaintiffs were the residuary legatees therein.

In February, 1902, John Hustis caused notice to be served on the owners of the water-power and mill-sites, Koch and Dehne, as follows:

"In answer to your communication dated January 13, 1902, I have to say that I am not maintaining the dam referred to therein. I have abandoned said dam, and claim no further interest therein. If it is in the condition you say, I request you to open the gates and let the water run out."

March 8, 1904, John Hustis executed and delivered to Frederick Dehne a written conveyance of real estate in Dodge county which, it is conceded, includes the strips of land in question, and which said conveyance described the property intended to be conveyed as follows:

"All my right, title and interest in and to the charter granted to me by the legislature of Wisconsin to build and maintain a dam on Rock river in section nine (9), town ten (10), range sixteen (16) east, known as Hustis Rapids, in the county of Dodge, state of Wisconsin. Together with any and all rights occasioned by the erection of said dam, together with any and all the lands east and north of Canal street south of dam, in the village of Hustisford in said county, extending south and east to end of mill-race or canal, all of said lands lying west and south of Rock river, also a square piece of land 25 feet each way on the east and west ends of said dam, excepting the rights and mill privileges deeded to John W. Cole, Waldo Lyons, and Josiah Everett, dated August 31, 1855, and same rights and privileges

deeded to F. Koenig and John F. Koch dated August 18, 1864. This deed is meant to cover all and any lands I now own or be possessed of lying east and north of Canal street, which is fifty feet wide, and in part consideration hereof the said Fred Dehne, for himself, his heirs, or assigns, is to assume all and any expense, costs, or damages that may hereafter occur by reason of maintaining said dam, and to protect in every way the interest of John Hustis, his heirs or assigns."

On the same day the said John Hustis and the plaintiffs executed and delivered to the said Dehne a written instrument called hereafter the gravel-pit lease, giving to the said Dehne certain rights to remove gravel for use in repairing and maintaining the dam in question here from a strip of property adjacent to the dam, the material part of which writing was as follows:

"A certain right to haul and take away any and all gravel stones and dirt on a piece of land 150 feet square, commencing at a point (Iron Pin) at the northeast corner of a twenty-five feet square on east end of Hustisford dam heretofore deeded to said Frederick Dehne and extending northeasterly and northerly 150 feet each way from said point. Together with a right of way to and from said twenty-five feet square above mentioned northerly and along the east bank of Rock river as now used to the Hustisford and Woodland road, said gravel or dirt not to be removed lower than five feet above high-water mark on said river."

The consideration mentioned in the conveyance from Hustis to Dehne in 1904 was $350, and that in the conveyance of the right to take gravel, signed by Hustis and the plaintiffs, was $1. It is undisputed that John Hustis received at the time of the execution of the two instruments $450 and that neither of the plaintiffs received any sum whatever.

In 1894 one John F. Koch, who was then the owner of one of the mills receiving power from said dam, brought a suit in the circuit court for Dodge county against John

Hustis and Laura A. Hustis as owners of the dam here in question to recover a certain share of the cost of repairs. Laura A. Hustis in that case answered denying ownership of the dam except as to dower interest, and John Hustis answered alleging sole ownership. On the trial it was found by the referee, and subsequently confirmed by the circuit court, that Laura A. Hustis owned the dam at the time of the execution of the deed under which the plaintiff Koch claimed, but that in signing such deed she acted upon the assumption that her husband was the owner. The circuit court confirmed the referee's report and adjudged that both John Hustis and Laura A. should pay damages to Koch. The cause was appealed to this court and is reported in 113 Wis. 599, 87 N. W. 834. The judgment therein was here reversed and the complaint ordered dismissed. In the statement of facts in that case it was stated (page 600):

"At the time of the making of this deed [referring to the deed of the water power to Koch] Laura A. Hustis was the owner in fee of the premises deeded, and also of the milldam referred to ·in the deed and the canal and mill-race. This milldam was situated at Hustisford in Dodge county, and lay across the Rock river. The lot conveyed by the deed aforesaid was below the dam, and no part of the dam was in terms conveyed by the deed."

John Hustis died in 1907, then over ninety-seven years old.

This action was commenced in 1908 against several defendants, but by subsequent proceedings such other defendants were eliminated and the action finally tried as against the defendants above named, who claim title by mesne conveyances of the right to these two pieces of twenty-five feet square each by virtue of the conveyance of March, 1904, from said John Hustis to Dehne, and asserting that as to any title to such property that may have existed in the plaintiffs as residuary legatees of Laura A. Hustis, their mother, the plaintiffs were estopped to assert the same by reason of

their failure to assert such at the time of the conveyance by John Hustis in March, 1904, and by the recital as to such conveyance in the gravel-pit lease of the same date.

The trial court held the plaintiffs estopped from asserting title to the parcels of land and the dam in question, and directed judgment for the defendants dismissing the complaint upon the merits. From such judgment the plaintiffs appealed.

For the appellants there was a brief by *Husting & Husting* of Mayville, and oral argument by *B. A. Husting.*

For the respondents there was a brief by *Thompson, Myers & Kearney* of Racine, attorneys, and *F. Ryan Duffy* of Fond du Lac, of counsel, and oral argument by *Mr. P. M. Myers* and *Mr. Duffy.*

ESCHWEILER, J. The appellants in this case assert that there is no proper foundation in the evidence for certain of the findings of fact upon which the court reached its conclusions of law in favor of the defendants. The substance of the findings so attacked is as follows: That the plaintiffs knew at the time of their signing the so-called gravel-pit lease of the giving of the deed to the property in question by their father, John Hustis, to Dehne; that the plaintiffs knew at such time of the statement in the opinion of this court in the case of *Koch v. Hustis,* 113 Wis. 599, 87 N. W. 834, and quoted *supra,* that Laura Hustis was there declared to be the owner in fee of this property; that Dehne, at the time of the deed to him by John Hustis in 1904, did not know of the ownership by Laura Hustis of the property nor that it had been so found by the court in which that action was tried, nor that it was so stated in the opinion of this court on the appeal of said case. An examination of the testimony, however, convinces us that there is evidence in this record to fully support each one of such challenged findings.

The plaintiff, *Mrs. Anthony,* with her husband had lived at Hustisford many years prior to 1904; Mrs. Hustis and

the plaintiff *Josephine L. Hustis* had made their home in
Milwaukee for a great many years prior to the mother's
death in 1900, although keeping up the family relationship
with the husband and father, John Hustis, who lived from
young manhood until his death in 1907 at the now village of
Hustisford. It appears that John Hustis was substantially
the only one, so far as the Hustis family is concerned, who
took any active steps with reference to the keeping up of
this property. So far as plaintiffs or their mother were con-
cerned, John Hustis made all the assertions of ownership to
this particular property. When repairs were to be made
they were done under his supervision and direction. The
revenues that came in any way connected with this property
went through his hands. He repeatedly, during his long life
in the vicinity and long after the conveyance to his wife by
her brother, James Ludington, declared the dam itself to
be his property. The notice of February, 1902, by John
Hustis to Koch and Dehne, set out in the statement of facts,
is of no significance as indicating any repudiation of title to
the real estate by John Hustis or recognition by him of title
in his children, and clearly relates to the upkeep of the struc-
ture of the dam and nothing else. It further appears that the
plaintiff *Josephine L. Hustis* did know in 1902, from con-
versations had with the late General Winkler, her counsel in
the case of *Koch v. Hustis, supra,* that it had been therein de-
termined that the mother rather than the father was the
owner in fee of the property in question here. It also ap-
pears that she was informed by her sister, *Mrs. Anthony,*
then living at Hustisford, that the father was conveying this
property to Dehne, and such information came to her at or
prior to the time she herself signed the gravel-pit lease.

No steps were taken by either of the plaintiffs to repudiate
the transaction or assert title until the commencement of
this suit in 1908.

Stress was laid upon the fact that Dehne, to whom the
conveyance was made in 1904 and through whom the de-

fendants claim title, must have known that Mrs. Hustis rather than her husband was the owner, on the ground that search as to the title would have disclosed; and furthermore, that having been a witness in the lawsuit between Koch and Mr. and Mrs. Hustis he must have known the result of such lawsuit and of the finding therein made, and sustained here, that the title was in Mrs. Hustis. He testified that he did not know, and the court was justified in so finding, and that Dehne, who had lived in the neighborhood many years, seeing and knowing of the transactions regarding this property by Mr. Hustis and of the relationship of the parties, was not, as against plaintiffs, bound to search for a possible title which plaintiffs might have had but did not then assert.

It was plaintiffs who knew or ought to have known that there was a possible claim on their own behalf to this property derived from their mother's estate at the time they joined in the gravel-pit lease knowing of the conveyance, for a valuable consideration, by the father to Dehne, acting in good faith and in reliance upon the assertion of title by John Hustis.

The property here involved was evidently considered as of no very great value at the time, as indicated by the consideration of only $450 paid by Dehne to John Hustis for such conveyance and the rights secured by the gravel-pit lease. Plaintiffs, without present protest, permitted this entire consideration to be paid to John Hustis. If their claim of title now asserted was then valid, the entire consideration belonged to them and not to their father. Their acquiescence in this transaction by their father under his assertion of title, with the knowledge they then had of the situation, brings them well within the doctrine that he who speaks not in assertion of his rights when he may, is, as to one who acts in reliance upon such situation, forever after bound to keep his peace and cannot subsequently assert such right as against such good-faith and relying purchaser. *Vilas v. Mason*, 25 Wis. 310, 323, 324; *McLean v. Dow*, 42 Wis. 610, 614; *Two*

*Rivers Mfg. Co. v. Day,* 102 Wis. 328, 332, 78 N. W. 440;
*Marling v. Nommensen,* 127 Wis. 363, 369, 106 N. W. 844;
*Williams v. J. L. Gates L. Co.* 146 Wis. 55, 61, 130 N. W.
880; *Mariner v. Milwaukee,* 146 Wis. 605, 609, 131 N. W.
442; *H. W. Wright L. Co. v. McCord,* 145 Wis. 93, 100, 128
N. W. 873; Jones, Evidence (2d ed.) § 275.

This disposition of the case renders it unnecessary to con-
sider the exceptions presented by the defendants on certain
of the findings of the trial court or any of the other questions
presented on this appeal.

*By the Court.*—Judgment affirmed.