MORAN, Respondent, vs. BURMEISTER and wife, imp., Appellants.

*March 10—June 6, 1933.*

For the appellants there were briefs by *Nettie E. Karcher* of Burlington and *Vilas H. Whaley* of Racine, attorneys, and *Martin R. Paulsen* of Milwaukee of counsel, and oral argument by *Mr. Whaley* and *Miss Karcher*.

For the respondent there was a brief by *Randall, Cavanagh, Stephenson & Mittelstaed* of Kenosha, and oral argument by *Roy S. Stephenson*.

The following opinion was filed April 11, 1933:

NELSON, J.   The facts found by the court and supported by the evidence are as follows: Ella Wilkinson obtained title

to certain real estate located near Twin Lakes in the town of Randall, Kenosha county. That real estate included certain platted property known as Unity Park and also unplatted lands. Unity Park abuts on Lake Marie. To the east of the platted lake lots is a public highway known as Park avenue. Ella Wilkinson platted a part of the real estate lying easterly of Park avenue under the name of Twin Lakes Orchard Subdivision. After the platting of said lands Ella Wilkinson, as owner thereof, through her husband John C. Wilkinson, who operated a real-estate office in the city of Chicago, advertised and offered for sale lots in said subdivision. A considerable number of lots were sold. The plaintiff purchased lots 5 and 6 and in said subdivision for the purpose of erecting thereon a club house for a small club known as the Crispin Club which was composed of himself and certain fellow employees. In March, 1927, when the plaintiff purchased the two lots, Ella Wilkinson was the owner of lot 11 in Unity Park Subdivision. She obtained title thereto under a deed dated August 31, 1926. Said lot 11 abuts on Lake Marie and is across Park avenue from lots 5 and 6, purchased by the plaintiff. Immediately to the north of said lot 11 is a strip of land about twenty feet wide which was evidently dedicated, at the time of the original platting of Unity Park Subdivision, as a public passageway from Park avenue to Lake Marie. Prior to the purchase of the two lots by the plaintiff and while the negotiations for such purchase were in progress lot 11 was shown to the plaintiff. The agent conducting the negotiations for Ella Wilkinson showed plaintiff the lake front and stated there was going to be a pier and benches put out there, and that there was going to be a little park there. In February, 1927, the plaintiff, accompanied by two witnesses, spoke to Wilkinson about lot 11. Wilkinson was asked to put that lot in the deed. They testified that they stated to him that they wanted eighty-five feet back from the lake, and that he finally agreed to give it to them. On March 10, 1927, J. C. Wilkinson &

Company acknowledged receipt of plaintiff's check for the remainder of the purchase price, amounting to $1,525, as follows:

"We are in receipt of check for $1,525 in payment of balance of purchase price on lots 5 and 6, block 1, Twin Lakes Orchard Subdivision, and we are inclosing herewith deed for said lots from Ella Wilkinson and John C. Wilkinson, her husband, to Martin T. Moran.

"We are also inclosing herewith agreement for beach frontage which contains the legal description of the property to be provided for all lot buyers for beach purposes."

The deed mentioned was a warranty deed and contained the following covenant:

"(b) The guarantor covenants . . . to provide a passageway to Lake Marie near the property for the convenience of all property owners of said subdivision, said passageway being for free access to said lake by the property owners of said subdivision."

The agreement for beach frontage mentioned in the letter and which the court found was inclosed therein is as follows:

"In connection with lots 5 and 6 in block 1, Twin Lakes Orchard Subdivision, Kenosha county, Wisconsin, which you have this day purchased. Whereas, there is a provision in warranty deeds for sale of all lots in said subdivision for access to Lake Mary; and whereas, the owners of said subdivision only had access to said lake by reason of a twenty-foot opening extending from the highway to said lake and are the owners of the adjoining lot of about eighty feet extending from the highway to the lake, and which is legally described as follows:

"A strip of land eighty feet in width from and off the entire northeasterly side of lot 11 in block 1 in Unity Park, being J. L. Loveday's Subdivision of lots 1 and 2 in section 28, township 1 north, of range 19 east, of the fourth principal meridian, according to a plat and survey of said Unity Park on file and of record in the office of the register of deeds for Kenosha county, Wisconsin, and lying and being in the town of Randall, in the county and state aforesaid:

"We the undersigned owners hereby agree to provide for a beach occupying the entire frontage of said twenty feet and the adjoining eighty feet (lot measurements being more or less) for the convenience of all lot buyers of said Twin Lakes Orchard. It being understood that the depth extending from the lake toward the highway will be left to the discretion of the owners of said Twin Lakes Orchard."

The deed was signed by both Ella Wilkinson and her husband and the agreement just recited was also signed by both of them. The plaintiff recorded his deed but did not record the agreement. The defendants also purchased a number of lots in Twin Lakes Orchard Subdivision. The Crispin Club erected upon lots 5 and 6 a club house for summer outing and recreation purposes. The defendants also improved certain of the lots purchased by them, as did also other purchasers of lots. At the time of the trial there were twelve houses or cottages on lots in Twin Lakes Orchard Subdivision. In 1927 the Wilkinsons purchased lumber with which the defendant, Mr. Burmeister, built a pier extending out into Lake Marie from the northeasterly eighty feet of lot 11. The pier was thereafter moved toward the east and a new concrete slab was erected by the defendant, Mr. Burmeister, at the shore end of the pier. Commencing in 1927 and continuing for about four years, all of the lot-owners in Twin Lakes Orchard Subdivision and their families and guests, including the plaintiff and other members of the Crispin Club and their families and guests and the defendants, members of their families and their commercial guests, have used the northeasterly eighty feet of lot 11 as a means of access to Lake Marie for bathing, fishing, boating, beach and park purposes. In the fall of each year, commencing in 1927, the pier mentioned has been taken up by Mr. Burmeister and stored on the shore until the next spring. Mr. Burmeister presented bills to the Crispin Club at least twice for part of the cost of removing and putting out the pier. The lake

frontage of lot 11 was otherwise improved to a depth of about eighty-five feet from the lake.

The court found that by the agreement hereinbefore mentioned, delivered to the plaintiff at the same time that the deed to lots 5 and 6 was delivered, there was conveyed to the plaintiff, in addition to the twenty-foot right of way to Lake Marie, an easement over, across, and upon so much of said strip of land eighty feet in width from and off the northeasterly side of lot 11, to be used in connection with said lots 5 and 6, for beach purposes, and for the convenience of all lot-owners and buyers in Twin Lakes Orchard Subdivision; that the depth thereof was to be left to the discretion of Ella Wilkinson and John C. Wilkinson her husband; that thereafter, during the years 1927 and 1928, Ella Wilkinson and her husband caused said northeasterly eighty feet of said lot to be cleared of trees and brush and to be prepared as a beach to a depth of eighty-five feet from the shore line of Lake Marie, caused a pier to be erected thereon, and furnished and installed benches for the convenience of the users of said land; that on numerous occasions John C. Wilkinson, as the agent of Ella Wilkinson, informed and advised the plaintiff and other purchasers of lots that said strip eighty by eighty-five feet was set aside for beach and other uses; that ever since 1927 said parcel has been maintained in its improved condition, and that such acts of Ella W. and John Wilkinson in so setting aside and improving such strip to a depth of eighty-five feet constituted an exercise of their discretion as to the depth of said tract to be covered by said easement. The court further found that from April, 1927, to 1931 inclusive, the defendants knew of the existence of such easement and of the rights of the plaintiff and others, including themselves, to use said strip of land for beach purposes; that at the time Ella Wilkinson and her husband conveyed the northeasterly eighty feet of lot 11 to the defendants, the defendants knew of the terms of the agreement dated March 8, 1927, between

the Wilkinsons and the plaintiff and knew of the existence of said easement; that the defendants accepted and received their deed with full knowledge of the existence of said easement and right of way over, across, and upon said strip; that the defendants at all times knew of the rights of the plaintiff and that he claimed such rights and continuously exercised them.

The court concluded that the plaintiff was and ever since March 8, 1927, had been the owner of an easement or right of access to Lake Marie and for beach purposes in and upon said lands, and that the defendants and all persons claiming under them should be perpetually enjoined from interfering with the plaintiff's use and occupancy of said strip and from removing trees, brush, and soil therefrom.

The defendants contend that neither the letter of March 8, 1927, nor the agreement accompanying the delivery of the deed operated to convey to the plaintiff an easement in or upon lot 11, even though the letter, deed, and agreement were delivered at the same time. With this contention we agree. Sec. 235.01, Stats., provides in part as follows:

"Conveyances of land or any estate or interest therein may be made by deed signed and sealed by the person from whom the estate or interest is intended to pass, . . . and acknowledged or proved as directed in this chapter."

Sec. 235.50 provides in part as follows:

"The term 'conveyance,' as used in this chapter, shall be construed to embrace every instrument in writing by which any estate or interest in real estate is created, . . . or by which the title to any real estate may be affected in law or equity."

We think it clear that the agreement did not convey any interest in real estate.

Nor do we think that the deed, letter, and agreement, even if construed as one instrument, can properly be held to have conveyed an easement.

But it does not follow that the judgment must be reversed. This action is in equity. In equitable actions we

may examine the whole record and determine whether the findings of fact support the judgment and warrant the relief given regardless of the fact that the court's conclusions of law are erroneous. *Williams v. J. L. Gates Land Co.* 146 Wis. 55, 130 N. W. 880; *Harris v. Welch,* 148 Wis. 441, 134 N. W. 1041; *Estate of Koch,* 148 Wis. 548, 134 N. W. 663; *Garage Equipment Mfg. Co. v. Danielson,* 156 Wis. 90, 144 N. W. 284; *Poole v. Tannis,* 137 Wis. 363, 118 N. W. 188, 864; *Haritos v. Haritos,* 185 Wis. 459, 202 N. W. 181.

It is clear that the evidence adduced upon the trial of this action would justify a reformation of the deed given by the Wilkinsons to the plaintiff in an action brought against them. The intention of the parties as expressed in the deed, letter, and agreement seems so clear as to give rise to no reasonable controversy. That both the plaintiff and the Wilkinsons understood that a portion of lot 11 lying next to the lake was to be provided as a beach in addition to the twenty-foot right of way, for the convenience of all owners and buyers of lots in Twin Lakes Orchard Subdivision, cannot be doubted. The agreement clearly so provides.· Had the agreement been incorporated into the deed, no one could deny that it would have had such force and effect.

If the Wilkinsons themselves, after having accepted the consideration and delivered the deed, letter, and agreement to the plaintiff, and after having improved the northeasterly eighty feet of lot 11 to a depth of eighty-five feet by clearing the same, constructing piers, and installing benches thereon, in addition to improving the twenty-foot right of way, had forbidden the plaintiff to use that portion of lot 11 which, in the exercise of their discretion, they had selected, it seems clear that it would have to be held, on principles of equity, morality, justice, and good conscience, that they

are estopped from claiming that an easement had not been granted.

The court found that the defendants well knew of the terms of the agreement between the plaintiff and the Wilkinsons and of the rights of the plaintiff and others thereunder, that the plaintiff claimed an easement in said lands, and that he had exercised his rights thereunder.

It is settled that when a grantee has knowledge of facts giving rise to an equitable estoppel as against his grantor with respect to lands purchased by the grantee, such estoppel may likewise be asserted or set up as a bar against the grantee. The rule is thus stated in 21 Corp. Jur. p. 1183:

"And where a grantee at the date of his purchase knew of the existence of the facts which operate as a bar to the claim of his grantor to the land conveyed, this knowledge will likewise operate as a bar to an assertion of title by him to the property described in the deed; and this is the case where he has knowledge which would have put him on inquiry, such as would have led to a knowledge of the facts." (Citing cases.)

To the same effect is the holding in *Haag v. Gorman,* 203 Wis. 346, 234 N. W. 337. An equitable estoppel may, of course, not be successfully asserted against a subsequent grantee who has no knowledge of the facts which give rise to the estoppel and who is in fact an innocent purchaser for value, without notice. 21 Corp. Jur. p. 1182, § 186 (3), and cases cited. The court specifically found that the defendants were not innocent purchasers. In our opinion the judgment cannot be affirmed on the theory that a conveyance was effected, but it can and should be affirmed on the grounds of equitable estoppel.

*By the Court.*—Judgment affirmed.

A motion for a rehearing was denied, with $25 costs, on June 6, 1933.