CRANE and others, Respondents, vs. ESMOND, Appellant.

*February 8—April 3, 1934.*

574

For the appellant there was a brief by *Wilbershide &
Baumblatt* of Racine, and oral argument by *J. C. Wilber-
shide*.

*O. R. Moyle* of Union Grove, for the respondents.

ROSENBERRY, C. J.  The findings of fact made by the
trial court in this case so far as they relate to contested mat-
ters are really conclusions of law.  However, the court filed
an opinion in which is stated the factual basis of its decision.
That part which is material is as follows:

"The father is dead, his lips are sealed, there is no one to
speak for him with reference to what took place in 1917
when the deed was executed and delivered to Ray Esmond
to the west 52 acres, but actions sometimes are more con-
vincing and more persuasive of what actually occurred than
words.  From the action of the parties after 1917 the court
is firmly persuaded that there was an understanding between
the father and the son that the deed of 1913 was to be can-
celed and the deed of 1917 substituted in lieu thereof.  Part
of the consideration which was given in 1913, namely, a note
for $4,700 given by Ray to his father, was canceled.  Can
the defendant after waiting for a period of fifteen years
during which time his father was alive and during which
time he could have made known his claim to the east 52
acres, after the lips of his father are sealed in death be per-
mitted to lay claim to the east 52 acres when the land during
that period had been occupied or rented by his father, the
taxes on which had been paid by his father, and all the rights
and privileges of ownership been exercised by his father and
known at all times to the defendant to have been so exer-
cised?"

A careful study of the evidence leads to the conclusion
that there is no evidence of any agreement made between the
father and the son with respect to the reconveyance of the
104-acre tract.  The only testimony offered which in any
way tends to support such a conclusion is that given by one

of the plaintiffs, Inez Crane, to the effect that the defendant, in the summer of 1932, fifteen years after the occurrence, told her that his father became very excited over the matter and that he went home and got the deed and gave it to his father, who threw it in the stove; and the further fact that the father executed and delivered to the defendant a deed for the west 52 acres. It is not clear from the findings of fact or conclusions of law upon what basis the trial court placed its decision. It is a fair inference from the part already set out in the quotation that it was on the ground of estoppel.

We turn now to an examination of the principles underlying the doctrine of estoppel as affecting the title to land. It has been stated by eminent authority and approved by the supreme court of Alabama in *Jacksonville Pub. Serv. Corp. v. Calhoun Water Co.* 219 Ala. 616, 123 South. 79, 64 A. L. R. 1550, citing 2 Pomeroy, Eq. Jur. (4th ed.) § 807, that in order to affect the title to land by way of equitable estoppel—

"the following grounds must appear: '(1) There must be conduct—acts, language, or silence—amounting to a representation or a concealment of material facts. (2) These facts must be known to the party estopped at the time of his said conduct, or at least the circumstances must be such that knowledge of them is necessarily imputed to him. (3) The truth concerning these facts must be unknown to the other party claiming the benefit of the estoppel, at the time when such conduct was done, and at the time when it was acted upon by him. (4) The conduct must be done with the intention, or at least expectation, that it will be acted upon by the other party, or under such circumstances that it is both natural and probable that it will be so acted upon. . . . (5) The conduct must be relied upon by the other party, and, thus relying, he must be led to act upon it: (6) He must in fact act upon it in such a manner as to change his position for the worse.' "

In addition to these specific grounds, consideration is given to the further proposition that—

"where it is sought to estop the owner of land to assert his legal title, 'it is obvious that the doctrine should be carefully and sparingly applied, and only on the disclosure of clear and satisfactory grounds of justice and equity. It is opposed to the letter of the statute of frauds, and it would greatly tend to the insecurity of titles if they were allowed to be affected by parol evidence of light or doubtful character.' 2 Pomeroy, Eq. Jur. (4th ed.) § 807." *Jacksonville Pub. Serv. Corp. v. Calhoun Water Co., supra.*

Discussing this matter in *Davis v. Davis,* 26 Cal. 23, 43, 85 Am. Dec. 157, at p. 168, the supreme court of California said:

"We may say in respect to parol evidence of the declarations and admissions of persons made long anterior to the trial, upon which an estoppel *in pais* may be sought to be founded, that it cannot be too carefully scrutinized by courts and juries. In all cases it is the most dangerous species of evidence that can be admitted in a court of justice, and the most liable to abuse. In most cases it is impossible, however honest the witness may be, for him to give the exact words in which the declaration or admission was made. Sometimes even the transposition of the words of a party may give a meaning entirely different from that which was intended to be conveyed. The slightest mistake or failure of recollection may totally alter the effect of the declaration or admission. And more than this, it is most unsatisfactory evidence on account of the facility with which it may be fabricated, and the impossibility, generally, of contradicting it when false."

This court said in *Gove v. White,* 20 Wis. *425, at p. 434:

"Courts will not construe ignorance or misapprehension of the true nature or existence of a right into a forfeiture of the power to enforce it. It must appear that the party to be estopped was acquainted with his title and wilfully concealed or misstated it, or that he was guilty of such gross negligence

and indifference to the rights of others as, under the circumstances, to be equivalent to actual and premeditated fraud."

The court of appeals in *Lyon v. Morgan*, 143 N. Y. 505, 38 N. E. 960, said:

"The doctrine of estoppel, when invoked for the purpose of working a change in the title to land, is to be applied with great caution. It permits verbal statements or admissions to be substituted in place of the written evidence of transfer which the statute of frauds and the general rules of law require in such cases, and hence should not be applied unless the grounds upon which it rests are clearly and satisfactorily established, and not then except in support of a clear equity or to prevent fraud."

The following cases present examples of the application of these fundamental principles: *Moran v. Burmeister*, 211 Wis. 669, 247 N. W. 873; *Knauf & Tesch Co. v. Elkhart Lake S. & G. Co.* 153 Wis. 306, 141 N. W. 701; *Hovely v. Herrick*, 152 Wis. 11, 139 N. W. 384; *Hustis v. McWilliams*, 175 Wis. 365, 185 N. W. 159; *Mariner v. Milwaukee*, 146 Wis. 605, 131 N. W. 442; *Chloupek v. Perotka*, 89 Wis. 551, 62 N. W. 537.

It is quite apparent from a consideration of the evidence that in 1917 the father thought himself reinvested with the title to the 104 acres because he had received from Mitchell Leach a deed to the entire tract, for on that day he redeeded the west 52 acres to his son. Whatever there was of misunderstanding on the part of the father arose because the father misconceived the effect of the deed given to him by Mitchell Leach, not by reason of any misrepresentation made by the defendant. He did not know that the after-acquired title passed to the defendant by virtue of the covenants in the former deed. 2 Jones, Evidence, § 282 and cases cited. There is no evidence which tends to show that the defendant did anything to bring the situation about. He testified that he thought his father had double-crossed him. So that the

case is entirely lacking in any false representations made by the defendant or in the doing of any act or the pursuit of any course of conduct upon which the father relied to his detriment. If the evidence of the defendant be stricken from the case, then there is no evidence except a bare inference amounting to no more than a guess or suspicion that there was any understanding between the father and the defendant for a reconveyance of the premises. This is wholly insufficient under the well-established law of this state to create an equitable estoppel or to form a basis of a judgment for specific performance. In order to entitle a plaintiff to the benefit of those remedies the proof must be clear, satisfactory, and convincing, and not rest upon mere inference. The fact that the father had paid the taxes upon the premises is without significance for the reason that it appears that down to 1923 the entire 200 acres had been assessed to the father. This included the 96 acres deeded to the son as to which there is no question.

Some argument is based upon consideration of the fact that the father, shortly after the making of the deed in 1917, went to live upon the east 52 acres. This was where he had formerly lived. He left the home of his son because he had trouble with the son's wife or, as the testimony has it, was jealous of her, but the father and son continued to work and manage the property thereafter as they had theretofore. The son testified that he told his father that matters should continue as they had; he visited his father frequently in his home, and there is no evidence of any unfriendly relationship between the father and the defendant unless such can be inferred from the fact that the father had trouble with the son's wife. There is not in the entire case a scintilla of evidence that the son had any knowledge or information or was aware of any situation which was not equally within the knowledge and information of the father and of which the

father was not equally well aware. All of the circumstances relied upon to create an estoppel *in pais* are equally consistent, if not more consistent, with the conclusion that the father, conceiving himself to be reinvested with the title by the Leach deed, took advantage of the situation to reimburse himself. The son testified that prior to the making of the 1917 deed he had contemplated going to Oregon. As an inducement for him to remain at home his father offered to surrender the $4,700 note. The son remained at home and the note was surrendered and canceled. This circumstance certainly cannot be relied upon to establish equities in favor of the father growing out of the execution of the deed in 1917. Estoppels cannot be based upon mere conjectures even if a proper foundation is laid for them in other respects. *White v. Continental Nat. Bank,* 64 N. Y. 316, 21 Am. Rep. 612. See, also, 21 Corp. Jur. p. 1253 and cases cited, note 95.

It is considered within the doctrine of the cases cited that the plaintiffs wholly failed to establish either estoppel *in pais* or any other basis of equitable relief.

*By the Court.*—Judgment appealed from is reversed, and cause remanded with directions to dismiss the plaintiffs' complaint upon the merits.

FOWLER, J. (*dissenting*). The trial judge's findings are stated as mere conclusions of ultimate facts of ownership and the law consequent thereon. From a written opinion filed it appears that the trial judge was "firmly persuaded" that it was understood at the time the mortgage was paid by the son that "the deed of 1913 (of the 104 acres) was to be canceled and the deed of 1917 (of the east 52 acres) substituted in lieu thereof," and considered that by the agreement thus reached and by assenting without objection to the claim of ownership for fifteen years, the son was estopped from asserting claim under the 1913 deed.

It is claimed that the finding of the trial judge that agreement as stated was made is not supported by the evidence, and in the opinion of the court filed that view is strenuously upheld. The evidence is correctly stated in that opinion. We refer to that opinion for a detailed statement of it. But the evidence was mostly from the mouth of the defendant. I consider that the trial judge was not obliged to accept the defendant's testimony at one hundred per cent. of its face value. He might properly discount that testimony to any degree reasonable under the circumstances. He might reasonably discredit the son's statement respecting the consideration for the cancellation of the $4,700 note which was a part of the consideration for the 1913 deed. He might reasonably discredit the son's statement as to the time when the note was canceled. He might properly consider that the surrender of the note was the consideration for the agreement that he found was made. It does not clearly appear that the trial judge took the view that the note was canceled at the precise time the agreement found was reached. He merely states that the note was canceled. He does not state when it was canceled. If it was canceled as claimed by the son, the fact that the son did not pay the note is still in the picture. He did not make the payment he agreed to make as consideration for the 1913 deed. This is a circumstance that well may have been considered by the parties when the agreement was made and have constituted a partial consideration or inducement to the son's agreement to release all rights under that deed. That agreement, if made, cannot be voided as without consideration. The son may as fairly be held to his agreement to release his rights to the east 52 acres merely because his father wanted him to as he might be held to a deed of the east 52 acres had he executed one under the same circumstances, if an estoppel exists to bar him from asserting rights under the 1913 deed. Both the

agreement and estoppel were found by the trial judge and his findings cannot be disturbed unless it can be said that under any reasonable view of the evidence they are against the clear preponderance thereof. Of course, if the trial judge is bound to give the same credence to the testimony of the defendant that is given in the opinion of the court and to draw the same inferences of fact therefrom that are drawn in that opinion, the case should be reversed. But we are not the triers of the facts. The trial judge was, and his conclusions of fact should not be cast aside as unworthy of consideration. They are presumptively correct. And they must be upheld if they reasonably can be.

It is claimed that a finding of estoppel is not warranted in this case because to constitute an estoppel the party claiming it must have relied on the conduct claimed to have created it and taken action to his prejudice because of such reliance; and that because the plaintiffs herein took no action whatever and parted with nothing whatever in reliance upon the agreement found, no estoppel exists. But the parties to the agreement were the father and the son. If the son was estopped as against the father, he is estopped as against his devisees. The father, in the view of the trial court, acted in reliance on the agreement. He took possession of the east 52 acres and held it until his death. He devised the tract to the plaintiffs in reliance upon the agreement. And in reliance on that agreement and the son's continued acquiescence therein he refrained from taking action to enforce his right as he might have done had he known that the son was repudiating it or intending to repudiate it. The agreement having been in effect to release or surrender rights under the 1913 deed, the father could by action have compelled the son to execute such instrument as was necessary to effectuate it, although the parties erroneously understood that the destruction of the 1913 deed and the execution and acceptance of the 1917 deed

constituted legal compliance therewith. The father having thus, during his lifetime, in reliance upon the agreement and the son's continued acquiescence therein, refrained to his prejudice from taking action which he might have taken had he known that the son was repudiating or intending to repudiate the agreement, the son was estopped from claiming adversely to his father, and is now estopped from claiming adversely to his devisees.

The situation is thus the same in effect as was that involved in the case recently decided, *Moran v. Burmeister,* 211 Wis. 669, 247 N. W. 873, wherein a judgment was affirmed that enjoined defendants from interfering with the plaintiff's rights under an instrument and accompanying transactions which the plaintiff claimed created but which were insufficient to create an easement, on the ground that the facts created an equitable estoppel against the defendants that precluded them from asserting claims adverse to the claims of the plaintiff. The reason for that decision and the citation of authorities given in the opinion in that case afford ample support for affirmance of the judgment appealed from herein.

While the above seems entirely sufficient to cover the case, there are many decisions of this court that recognize the principle of deprivation of title to real estate by estoppel *in pais.* It is entirely correct to say, as appellant contends, that title is not reconveyed and cannot be reconveyed merely by the tearing up of a deed which has operated to convey title. Appellant cites many cases to that effect. *Wilke v. Wilke,* 28 Wis. 296; *Hilmert v. Christian,* 29 Wis. 104; *Bogie v. Bogie,* 35 Wis. 659; *Rogers v. Rogers,* 53 Wis. 36, 10 N. W. 2; *Lampe v. Kennedy,* 56 Wis. 249, 14 N. W. 43; *Wheeler v. Single,* 62 Wis. 380, 22 N. W. 569. In none of these cases, however, was the question of estoppel involved or considered. But it is just as true as stated in *Knauf &*

*Tesch Co. v. Elkhart Lake S. & G. Co.* 153 Wis. 306, 141 N. W. 701:

"Many illustrations are found in our books of the application of the doctrine of estoppel *in pais* to change title to realty from one person to another to save the latter from the consequences of the former's fraudulent representations on the faith of which such other has acted."

There is no distinction, in principle, between estoppel by representation and estoppel by conduct. Both are estoppel *in pais*. In *McCord v. Hill,* 117 Wis. 306, 94 N. W. 65; *Williams v. J. L. Gates Land Co.* 146 Wis. 55, 130 N. W. 880; *Two Rivers Mfg. Co. v. Day,* 102 Wis. 328, 78 N. W. 440, and *Haag v. Gorman,* 203 Wis. 346, 234 N. W. 337, estoppel by representation was held created. In *Hovely v. Herrick,* 152 Wis. 11, 139 N. .W. 384; *Hustis v. Mc-Williams,* 175 Wis. 365, 185 N. W. 159, and *Mariner v. Milwaukee,* 146 Wis. 605, 131 N. W. 442, an estoppel was by conduct held created. In none of the three cases last cited was any representation involved. In the first a testator devised lands to his wife for life with remainder to his heirs. The widow for consideration executed warranty deeds purporting to convey the fee, on the assumption by herself and her grantees that the will devised the fee to her. An heir received and retained a share of the consideration and was held estopped thereby to claim the deeds from the widow were invalid. In the second the wife of John Hustis was the owner of a mill site. The husband and wife were living apart. After the wife's death the husband conveyed the land. The wife's heirs at the same time signed with the husband, their father, a lease of adjoining land conveying to the grantee the right to take sand and gravel from the leased land to keep the dam in repair. The whole consideration was paid to Hustis, and the heirs permitted him to retain it. The grantee bought on the assumption that Hustis

owned the mill site. The heirs were held estopped from claiming title to the mill site. In the case last cited Mariner took a tax deed, knowing that the city of Milwaukee claimed title. The city withdrew the land from the tax roll. Mariner thus avoided payment of taxes. He was held estopped by his conduct from claiming title under his tax deed. The case of *Chloupek v. Perotka,* 89 Wis. 551, 62 N. W. 537, is also in point. A deed was executed reciting that it was made "to correct errors and omissions and mistakes" in a deed previously executed. The grantee thereafter claimed title under the previous deed to premises not included in the latter. The court held he was estopped from so asserting title, saying:

"The grantee in a deed poll, by accepting it, becomes bound by its terms as completely and absolutely as the grantor, and it will operate as an estoppel against him by reason of its acceptance, as fully as against his grantor."

Here, the second deed to the son was not strictly in the nature of a correction of the first, but it was intended by the parties, in the view of the trial court, as a substitute therefor.

When the doctrine of estoppel *in pais* applies it is not subordinate, but supreme, and stays the operation of other rules of law. *Marling v. FitzGerald,* 138 Wis. 93, 120 N. W. 388. The doctrine applies to this case and stays the operation of the rule of law contended for by appellant.

In my opinion the judgment of the municipal court should be affirmed.

I am authorized to state that Mr. Justice FRITZ concurs in this opinion.